**Percy William RASPBERRY, Appellant,**

v.

**The STATE of Texas, State.**

**Joe L. ANDERSON, Jr., Appellant,**

v.

**The STATE of Texas,**

Nos. 2–86–148–CR, 2–86–147–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 5, 1987.

Rehearing Denied Dec. 23, 1987.

---

**194**

William W. Chambers, Fort Worth, for appellant Raspberry.

Gene P. Moore, Fort Worth, for appellant Anderson.

Tim Curry, Crim. Dist. Atty., Chris Marshall, and Betty Stanton, Asst. Dist. Attys., Fort Worth, for State.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

In a joint trial, a jury found appellants Raspberry and Anderson guilty of the offense of aggravated sexual assault and assessed punishment for each co-defendant at 60 years in the Texas Department of Corrections plus a fine of $10,000.00. *See* TEX.PENAL CODE ANN. sec. 22.021(a) (Vernon Supp.1987). Although co-defendants in a joint trial, they have brought separate appeals with some similar and identical points of error. We will address both of their appeals in this one opinion. They each raise three points of error.

We affirm the convictions.

Appellants were indicted on February 12, 1985 for aggravated sexual assault. At trial on February 18, 1986, Raspberry and Anderson agreed to be represented by the same attorney. They both testified that no conflict of interest existed between them and that they had the same defense strategy.

During the guilt or innocence phase of the trial, the victim of the aggravated sexual assault, A____ D____, testified about the events on the night of the offense. Her testimony differed from the story which Raspberry and Anderson each told to the jury.

A____ D____ testified that one Saturday night in October 1984, she and her friend, K____ D____ went to two night clubs in Fort Worth to meet some of their friends. After the clubs closed at 2:00 a.m., they arranged to meet their friends for breakfast at the Old South Pancake House, and drove there in K____ D____'s car. When they arrived at the restaurant, K____ D____ decided to go home, and dropped A____ D____ off near the front of the building.

As A____ D____ walked in between two cars toward the front door of the restaurant, Raspberry grabbed her and forced her into his car. Anderson, who was in the passenger seat of the car, put a t-shirt over her head and told her she should do what Raspberry and Anderson told her to do or Anderson would blow her head off. Raspberry and Anderson then drove A____ D____ to an apartment where they each raped her four to five times. About 5:30 a.m., the two men put her back in the car and drove her out to a deserted field, telling her she would be released. While driving to the field, they forced her to perform oral sex on each of them.

On arriving at the field, they told A____ D____ that they were not letting her go. They took turns raping her again. While one of the men raped her, the other would have oral sex with her, then they would change positions and repeat the process. A____ D____ was also forced to commit oral anal sex on both men.

When they stopped raping her, they discussed whether or not she should be killed. A____ D____ testified that Raspberry said she should not be allowed to live because he did not want to go to the pen. She testified that Anderson then told Raspberry that "if they got caught, it would be better to get caught for rape rather than rape and murder." A____ D____ then became hysterical and Anderson stated that if she did not "hush" he would go get a gun out of the car trunk and blow her head off. As they lead her back to the car, Anderson pulled out a knife and said if

they were going to kill her they would have already done it.

A___ D___ testified that after she and the defendants returned to the car, they drove back to the apartment, stopping briefly at a motel and convenience store. Finally, at about 3:00 p.m. on Sunday, October 21, 1984, the defendants drove A___ D___ to the area near her apartment complex and let her go.

During the defense's case-in-chief, Raspberry took the stand and testified to a different version of events than those told by A___ D___. Raspberry testified he and Anderson were looking for a parking place at the Pancake House when they saw A___ D___ standing at the front door of the restaurant. They invited her to return to their apartment for a few drinks and she accepted. At the apartment, Raspberry testified that A___ D___ voluntarily consented to have sexual intercourse with them both. Raspberry said the same sexual acts occurred as those described by A___ D___ in her testimony except that she had consented to each act. Raspberry testified that he and Anderson drove A___ D___ home about 3:00 p.m. on October 21, 1984. Anderson testified to essentially the same facts as Raspberry.

After the jury found both guilty, Anderson took the stand at the punishment phase of the trial. He admitted his guilt and agreed with A___ D___'s testimony that he had prevented Raspberry from killing A___ D___ in the field. On motion from Raspberry, the trial court found a conflict of interest between the two and appointed a different attorney, William Chambers, for Raspberry. Harwell, now only Anderson's attorney, moved for severance and a mistrial which the court denied. Chambers objected to Harwell's continued representation of Anderson and also moved for mistrial and severance which was denied. The trial court then recessed the trial. On March 27, 1985, the trial court appointed John Chidgey to represent Anderson. The trial resumed on April 8, 1985. The same jury which had found Raspberry and Anderson guilty, assessed punishment.

Raspberry, in points of error one and two, and Anderson, in his point of error one, claim they were denied effective assistance of counsel because of the conflict of interest which arose between them at trial. They contend that the conflict of interest adversely affected their original lawyer's performance and that the conflict of interest lead the trial court to appoint them each new and ineffective counsel.

█ The right of a defendant to effective assistance of counsel in a criminal proceeding is guaranteed by the Federal and State Constitutions and by State statute. (U.S. CONST., amend. VI; TEX. CONST. art. I, sec. 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1974). This right includes the freedom to select the counsel of his choice, *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981) (en banc), and the assistance of counsel free from any conflict of interest which could impair the counsel's effectiveness in representing the defendant. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); *Gonzales v. State*, 605 S.W.2d 278, 281 (Tex.Crim.App.1980).

█ Where two co-defendants have conflicting interests, the joint representation of co-defendants by one attorney may deny a co-defendant of his Sixth amendment right to assistance of counsel. *Calloway v. State*, 699 S.W.2d 824, 828 (Tex. Crim.App.1985). However, the mere fact of joint representation does not *per se* show ineffective assistance of counsel or an actual conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978); *Calloway*, 699 S.W.2d at 828–829.

█ Without a timely objection to joint representation, a trial court has no affirmative duty to inquire whether a conflict of interest exists. *See Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980), *Calloway*, 699 S.W.2d at 829. In order to establish ineffective assistance of counsel, a defendant who raised no objection at trial to joint representation, must demonstrate that an actual conflict of interests adversely affected his

lawyer's performance. *Cuyler*, 100 S.Ct. at 1718, *Foster v. State*, 693 S.W.2d 412, 413 (Tex.Crim.App.1985). An actual conflict of interest exists when one defendant may benefit significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of the co-defendant whom counsel is also representing. *Foster*, 693 S.W.2d at 413. Although a conflict of interest may exist, some harm or prejudice to the defendants must be shown in order to establish a sixth amendment violation. *See Cuyler*, 100 S.Ct. at 1718; *Calloway*, 699 S.W.2d at 829. Prejudice will be presumed only if the defendant demonstrates: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected his performance. *Burger v. Kemp*, 483 U.S. ——, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).

Raspberry and Anderson contend a conflict of interest surprisingly arose which adversely affected their original counsel Harwell's performance. They assert that the conflict of interest arose either during the guilt or innocence phase of the trial when A___ D___ testified about the conversation Anderson and Raspberry had regarding whether to kill her in the field, or at the punishment phase of the trial when Anderson, during cross-examination by the State, confirmed A___ D___'s earlier assertion. The following testimony was given by A___ D___ during the guilt or innocence phase of the trial.

Q. What were they talking about doing with you?

A. Whether or not they should let me go or kill me right then or take me somewhere else.

Q. Who said what, or do you recall?

A. The taller one said that—he had mentioned that he didn't think that I should live because if he got caught he didn't want—his words were "he didn't want some dumb bitch screwing up his life, sending him to the pen," and the other one told him that "if they got caught he would rather be caught for rape rather than be caught for rape and murder".

Q. Which one said he didn't want his life messed up?

A. The tall one.

Q. Mr. Raspberry?

A. Yes.

Q. Which one made the remarks about "better be caught for rape than murder"?

A. The shorter one.

Q. Mr. Anderson?

A. Yes.

Q. How long did this discussion go on?

A. Five or ten minutes.

The testimony of Anderson on cross-examination during the punishment phase was as follows:

Q. Are you now also willing to tell this jury that it was your intervention that kept Percy Raspberry from killing her out in that field?

A. Yes, sir.

Q. It was his idea and you stopped him; is that correct?

A. Yes, sir.

Raspberry and Anderson argue the conflict of interest prejudiced their right to a fair trial because they were forced to argue that the degree of culpability of one co-defendant outweighed that of the other co-defendant; therefore, a mistrial should have been declared.

■ To determine whether the conflict of interest prejudiced the rights of Anderson and Raspberry, under the *Burger* two-pronged test we must determine: (1) whether Anderson's and Raspberry's counsel, Harwell, actively represented conflicting interests; and (2) whether an actual conflict of interest adversely affected his performance. *See Burger*, 107 S.Ct. at 3120. We find that an actual conflict of interest did develop during the punishment phase of the trial; however, the conflict of interest was not of such a degree that it prejudiced Raspberry's or Anderson's right to a fair trial under the *Burger* two-pronged test. Harwell's joint representa-

tion of Raspberry and Anderson did not initially constitute an active representation of competing interests. Nor did the conflict of interest adversely subsequently affect each co-defendant's attorney's advocacy of his case. *See Burger v. Kemp*, 107 S.Ct. at 3120.

Harwell's representation did not constitute an active representation of competing interests because Raspberry and Anderson both stood to benefit from certain advantages which arise from joint representation and a joint trial. "Joint representation is a means of insuring against reciprocal recrimination [because] a common defense often gives strength against a common attack." *Holloway*, 98 S.Ct. at 1178 (quoting *Glasser*, 62 S.Ct. at 457).

During the guilt or innocence phase of the trial, Anderson and Raspberry both took the stand and testified that the victim voluntarily consented to engage in sexual intercourse with them, contradicting the victim's story of rape. Anderson also expressly denied that he and Raspberry took A____ D____ out to the field or that he prevented Raspberry from killing A____ D____. Anderson and Raspberry testified to essentially the same version of facts. Thus, they both bolstered the other's testimony and credibility and asserted a more effective defense than if they had each accused the other of being the more culpable rapist. If the defendants had decided to blame one another for the offense, their strategy might have caused them a more detrimental result. On one hand, Anderson could have claimed he intervened to prevent Raspberry from killing the victim in the field. On the other, Raspberry could have contended that Anderson also wanted to kill the victim and that Anderson was the one who possessed the weapon to accomplish the threats.

Only a potential conflict of interest, not an actual conflict of interest, existed during the guilt or innocence phase of the trial, and it did not affect Harwell's advocacy. Both Anderson and Raspberry knew Anderson had intervened to help the victim, and the victim had told the police about his intervention. However, during the guilt or

innocence phase of the trial, Anderson denied he prevented Raspberry from killing the victim. Instead, Anderson and Raspberry chose to stand by their common defense strategy, that the victim voluntarily consented to sexual intercourse. Harwell could not have been actively representing competing interests since Anderson told him there was no conflict. Thus, Harwell's multiple representation of Anderson and Raspberry did not constitute active representation of competing interests, even though it might have been in one defendant's interest to emphasize the culpability of the other. *See Burger*, 107 S.Ct. at 3120.

 Anderson claims an actual conflict of interest arose at the guilt or innocence phase and that a mistrial should have been declared because the State's witness created the surprise conflict, depriving Anderson and Raspberry of their retained counsel, Mr. Harwell. We disagree. Anderson and Raspberry knew before the trial began that a potential conflict of interest existed. Both defendants knew Anderson had intervened to help the victim, and from reading the police reports, knew the victim told the police about his intervention. Yet, at the conflict of interest hearing, Raspberry and Anderson testified that their defenses at trial were the same and no conflict of interest existed.

Anderson and Raspberry created the potential conflict and should have anticipated that the victim would testify at trial to the events which occurred at the deserted field. To hold otherwise would allow the defendants to unduly take advantage of the justice system by intentionally creating a conflict of interest. Co-defendants would then be allowed to hide behind the law where, as here, they knew a potential conflict of interest existed, requested joint representation by a single attorney, stated they were presenting a common defense at trial, and then, upon realizing their strategy failed, created a conflict of interest at the punishment phase in the hopes that a mistrial would be declared.

 An actual conflict of interest arose at the punishment phase when Anderson

verified the victim's story that he urged Raspberry not to kill the victim. When the actual conflict arose, surprising both the trial court and Harwell, the trial court appointed new separate counsel each for Raspberry and Anderson. *See Holloway,* 98 S.Ct. at 1178; *Calloway,* 699 S.W.2d at 828, 830.

 Although an actual conflict existed at this part of the trial, neither Anderson nor Raspberry were prejudiced by the conflict. It did not adversely affect the ability of either co-defendant's new attorney's ability to advocate his client's rights. In a similar case, the San Antonio Court of Appeals held that a defense counsel's multiple representation of co-defendants was not fettered or restrained since the trial court removed any potential conflict by appointing different counsel to represent the co-defendants. *DeLeon v. State,* 657 S.W.2d 160, 165 (Tex.App.—San Antonio 1983, no pet.)

Anderson and Raspberry also contend that the conflict of interest deprived them of effective assistance of counsel from the new attorneys appointed to them by the trial court during the punishment phase of the trial. They claim the conflict of interest adversely affected their new attorneys performance because they did not have adequate time to prepare for and become familiar with the case. Raspberry's attorney was appointed to represent him one month before the punishment phase of the trial resumed. Anderson's attorney was appointed to represent him ten days before the trial resumed.

 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, a defendant must show the counsel's performance was deficient; and second a defendant must show that the deficient performance adversely affected the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). When a defendant contends that his counsel's performance was deficient, judicial scrutiny of counsel's performance must be highly differential. *Id.,* 466 U.S. at 689,

104 S.Ct. at 2065, 80 L.Ed.2d at 694. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," and the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error in light of all the circumstances. *Id.,* 477 U.S. at ——, 106 S.Ct. at 2686–87, 91 L.Ed.2d at 327. *See also Butler v. State,* 716 S.W.2d 48 (Tex.Crim.App.1986).

 Raspberry and Anderson have failed to show how their new attorneys' performances were deficient. Both Chidgey and Chambers, appellants' new attorneys during the punishment stage, had the full ten days required under TEX.CODE CRIM.PROC.ANN. art. 26.04(b) (Vernon 1966) to prepare for trial. Both attorneys also stated they had sufficient time to read the record and statement of facts and ample opportunity to call witnesses. During the punishment phase of the trial, Anderson's attorney, Chambers, strenuously argued that Anderson was less culpable than Raspberry because he prevented Raspberry from killing the victim. Raspberry's attorney, Chidgey, was also able to point out effectively during closing argument that Anderson's testimony during the punishment phase directly contradicted his testimony given under oath during the guilt or innocence phase. During the guilt or innocence phase, Anderson had expressly denied that he and Raspberry had taken the victim to the field and that he had ever prevented Raspberry from killing the victim. However, during the punishment phase of the trial, Anderson contradicted himself and stated that he prevented Raspberry from killing the victim at the field. Raspberry's attorney effectively argued that Anderson had the most to lose during the trial since Anderson was the defendant who possessed the gun and knife and threatened to blow the victim's head off.

We hold that an actual conflict of interest arose between Anderson and Raspberry during the punishment phase of the trial, but it did not prejudice Anderson or Raspberry since their original attorney, Harwell, and their new appointed attorneys did not actively represent conflicting interests and the actual conflict of interest did not adversely affect either lawyer's performance. The jury assessed the same amount of punishment for Raspberry as they did for Anderson. This fact demonstrates the conflict of interest did not harm or prejudice either attorneys' performance since neither appellant received a longer sentence than the other for so sordid an offense, which was hotly contested, then admitted with finger pointing.

Since the conflict of interest was not shown to have prejudiced either defendant, we need not reach the merits of Raspberry's and Anderson's argument that they did not voluntarily and intelligently waive "conflict free" counsel. We overrule Anderson's point of error one and Raspberry's points of error one and two.

In Raspberry's third point of error, he contends the trial court erred by not granting him a severance and by denying his motion for mistrial because Anderson created the conflict of interest and the two co-defendants were forced to argue that one was more culpable than the other.

■ TEX.CODE CRIM.PROC.ANN. art. 36.09 (Vernon 1981) provides that:

Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

Thus, under article 36.09, the court must order the severance if: (1) a timely motion to sever has been filed; (2) evidence is introduced in the motion to sever; and (3) it is made known to the court that a previous admissible conviction against one defendant exists, or (4) that a joint trial will be prejudicial to any of the defendants. A timely motion for severance under article 36.09 must be made prior to the announcement of ready for trial. *Foster v. State,* 652 S.W.2d 474, 477 (Tex.App.—Houston [1st Dist.] 1983) *aff'd,* 693 S.W.2d 412 (Tex. Crim.App.1985).

■ We hold the trial court did not err in overruling Raspberry's motion for severance. The motion for severance was not timely since it was not made before trial; Raspberry's attorney's unsworn allegations of possible prejudice were not sufficient evidence to support the motion; and, as discussed previously, the record does not show Raspberry was prejudiced by the conflict of interest. We overrule Raspberry's point of error three.

■ Anderson, in his second point of error, asserts the court erred in submitting its charge to the jury on punishment because it outlined the possibility of parole. Anderson claims the charge violates the Texas Constitution provisions for the separation of power, arguing that it is the executive branch's prerogative to decide whether a convicted felon should be released on parole, yet the charge empowers the jury to apply the parole law in its assessment of punishment. We disagree.

The charge submitted to the jury in Anderson's trial tracked the jury charge regarding eligibility for parole set forth in TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a) (Vernon Supp.1987). We have previously held that article 37.07, sec. 4(a) is constitutional and does not usurp the executive branch of its power under article 2, section 1 and article 4, section 2 of the Texas Constitution. *Patton v. State,* 717 S.W.2d 772, 779–81 (Tex.App.—Fort Worth 1986, pet. granted). We overrule Anderson's second point of error.

In his third point of error, Anderson claims his conviction should be reversed because the trial court erred in recessing his trial for one month during the punishment phase of the trial. He contends that he was deprived of an impartial jury since the jury probably handed down a more severe sentence because it could have read or heard about other sexual assault cases or quickly paroled convicts.

Anderson admits that he can find no case law to support his contention. He also presents no evidence that the jury did not follow the trial court's instructions and no evidence that the one month recess had any effect on Anderson's sentence. Anderson's third point of error cites no authority for his contentions and is based on mere conjecture. Thus, it presents nothing for review and we overrule Anderson's third point of error. *See Brooks v. State*, 642 S.W.2d 791, 797 (Tex.Crim.App.1982); *McWherther v. State*, 607 S.W.2d 531, 536 (Tex.Crim.App.1980).

The judgment of the trial court is affirmed.