**Kedric De'Shaun KEGLER and Terry Lynn Kegler, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–99–00018–CR, 14–99–00019–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 4, 2000.

910

Randy Schaffer, Houston, for appellants.

William J. Delmore, III, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON and FROST.

1. Because the appellants pled guilty, the facts come from their statements unless otherwise

## OPINION

KEM THOMPSON FROST, Justice.

In this consolidated appeal, we address ineffective assistance of counsel issues arising out of one defense lawyer's joint representation of two brothers who were both charged with the offense of aggravated robbery and tried together in a single proceeding.

### Introduction

The appellants, Kedric De'Shaun Kegler ("Kedric") and Terry Lynn Kegler ("Terry"), each pled guilty to the offense of aggravated robbery. The trial court sentenced Kedric to thirty years and Terry to forty years imprisonment. Kedric appeals on two points of error, claiming: (1) his guilty plea was involuntary due to ineffective assistance of counsel, and (2) he was denied effective assistance of counsel because his lawyer also represented Terry. Terry appeals claiming he was denied effective assistance of counsel because his lawyer also represented Kedric. We overrule these points of error and affirm the decision of the trial court.

### Factual Background [1]

On the afternoon of June 4, 1997, Kedric and Terry were riding in a car with their friend, Christopher Thorne. As they were driving, Thorne remarked that "somebody is going to have to lay it down tonight," which is street jargon for robbing someone. The three men first considered robbing the occupants of a truck, but Terry decided against it when another truck parked nearby. Then they considered robbing a man who was wearing a necklace, but Terry indicated he "didn't feel like jacking him." After rejecting these two possible victims, they spotted Tremaine Green and Cashandra Hudgins sitting at a bus stop. According to the presentence investigation report, Thorne told

noted.

Kedric, "I'm gonna, we gonna go do them, what you gonna do?" Kedric replied that he would stay in the car.

While Kedric waited in the car, Terry and Thorne approached the bus stop where Green and Hudgins were waiting. Pointing a .357 magnum pistol at the unarmed couple, Thorne demanded their money and Green's watch. The victims responded by throwing Hudgins' purse and Green's watch to the ground. Thorne then shot and killed Green. While Hudgins ran to get help, Thorne and Terry fled the scene. Kedric, hearing the gunshots, backed the car out of the driveway where he was waiting, stopped to pick up Thorne and Terry, and then sped away. En route to the Keglers' residence, Thorne sold the gun used to shoot Green. Later that evening, Kedric went over to the house of his former girlfriend, LaKeysha LaGrange and told her what had happened.

According to the pre-sentence investigation report, Terry initially told the police that he knew nothing about the offense and that he had been at home at the time it occurred. Later, Terry admitted that he had been with Thorne when Thorne committed the robbery.

Both Kedric and Terry pled guilty to aggravated robbery without an agreed recommendation on punishment, and both filed motions for deferred adjudication of guilt. One attorney represented both Kedric and Terry at the plea and sentencing hearings.

### VOLUNTARINESS OF PLEA

In his first point of error, Kedric asserts that his guilty plea was involuntary because of ineffective assistance of counsel. He argues that defense counsel was deficient in not advising him that he was not culpable as a party merely by being present at the crime scene when he did not commit an affirmative act to assist the primary actors (Terry and Thorne) in the robbery and, in fact, refused to participate.

Both the federal and state constitutions guarantee the accused the right to have the assistance of counsel. *See* U.S. CONST. Amend. VI; TEX. CONST. ART. I, § 10; TEX.CODE CRIM. PROC. art. 1.05 (Vernon 1977). The right to counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex.Crim.App.1997). This right extends to the plea bargaining process. *See Ex parte Lafon*, 977 S.W.2d 865, 867 (Tex.App.—Dallas 1998, no pet.) (citing *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex.Crim.App.1991)).

To prove a plea was involuntary because of ineffective assistance of counsel, the appellant must show (1) counsel's representation/advice fell below an objective standard and (2) this deficient performance prejudiced the defense by causing him to give up his right to a trial. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim.App.1997), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 142 L.Ed.2d 31 (1998) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland*, 466 U.S. at 688–92, 104 S.Ct. 2052; *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). The appellant must prove ineffective assistance of counsel by a preponderance of the evidence. *See id.*

In any case analyzing the effective assistance of counsel, we begin with the strong presumption that counsel was competent. *See Thompson*, 9 S.W.3d at 813 (Tex.Crim.App.1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (en banc). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson*, 877 S.W.2d at 771. The appellant has the burden of rebutting this presumption by presenting evidence illustrating why trial counsel did what he did. *See id.* The appellant cannot meet this burden if the record does not

specifically focus on the reasons for the conduct of trial counsel. *See Osorio v. State,* 994 S.W.2d 249, 253 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Kemp v. State,* 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). This kind of record is best developed in a hearing on an application for a writ of habeas corpus or a motion for new trial. *See Kemp,* 892 S.W.2d at 115; *see also Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim.App.1998) (stating that when counsel is allegedly ineffective because of errors of omission, collateral attack is the better vehicle for developing an ineffectiveness claim). When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would cause the court to engage in mere speculation, a practice we will not indulge. *See McCoy v. State,* 996 S.W.2d 896, 900 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Jackson,* 877 S.W.2d at 771).

■ In this case, the record is silent as to the advice defense counsel gave Kedric and counsel's rationale, if any, underlying that advice. Kedric did not file a motion for a new trial or a habeas corpus petition and therefore, failed to develop evidence of trial counsel's strategy. Without evidence in the record, we are unable to conclude that defense counsel's performance fell below the objective range of competence. Therefore, we cannot conclude that Kedric's guilty plea was involuntary. Accordingly, we overrule Kedric's first point of error.

### JOINT REPRESENTATION

We now turn to Kedric's second point of error and Terry's only point of error, in which they claim they were denied effective assistance of counsel because one lawyer represented both of them. Kedric contends that defense counsel failed to vigorously emphasize that Kedric was less culpable by arguing that he (1) was minimally involved in the offense, (2) immediately demonstrated remorse by telling his former girlfriend what had happened, and

(3) fully cooperated with the police. Kedric also claims his case was harmed when defense counsel argued that Terry's lack of a criminal record showed that Terry's involvement was an aberration of character. Kedric claims that while this argument may have worked in favor of Terry, it worked against him because it served to highlight Kedric's numerous arrests and criminal history. Conversely, Terry argues that defense counsel harmed him by arguing Kedric was less culpable due to the fact Kedric was not "on the scene" and did not know about the shooting. Terry argues that Kendric's absence from the scene provided a stark contrast to Terry's presence at the scene with the gunman at the time of the robbery and murder.

■ An accused's right to reasonably effective assistance of counsel can be, but is not automatically, violated by the joint representation of multiple defendants. *See James v. State,* 763 S.W.2d 776, 779 (Tex.Crim.App.1989). In considering claims of ineffective assistance of counsel based on conflicts of interest, we look to *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See Monreal v. State,* 923 S.W.2d 61, 64 (Tex.App.—San Antonio 1996), *aff'd,* 947 S.W.2d 559 (Tex. Crim.App.1997). When the appellants do not show an actual conflict of interest, we look to *Strickland v. Washington* in considering claims of ineffective assistance of counsel. *See id.* at 63.

■ To prove the right to reasonably effective assistance of counsel has been violated by a conflict of interest, an appellant must show "(1) that his counsel was burdened by an *actual* conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance." *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997) (citing *Cuyler,* 446 U.S. at 348–350, 100 S.Ct. 1708) (emphasis added). To establish an actual conflict of interest, the appellant must show "one defendant stands to gain significantly by counsel adducing pro-

bative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *James,* 763 S.W.2d at 779 (quoting *Foster v. State,* 693 S.W.2d 412, 413 (Tex.Crim.App.1985)). Failure to emphasize the culpability of one defendant over the other does not create an actual conflict. *See Howard v. State,* 966 S.W.2d 821, 827 (Tex.App.—Austin 1998, pet. ref'd); *Raspberry v. State,* 741 S.W.2d 191, 197 (Tex.App.—Fort Worth 1987, pet. ref'd) (citing *Burger v. Kemp,* 483 U.S. 776, 784, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)). Some examples of when the potential for conflict becomes an actual conflict are when inculpating or exculpating testimony exists to the detriment of one defendant and when the defense strategy goes sour, or was thwarted by the strategy of the State. *See James,* 763 S.W.2d at 781.

The facts in this case are similar to those presented in *Howard v. State,* in which one attorney represented two brothers, Chedrich and John Howard. Both of the Howard brothers were charged with attempted murder and tried together in a single proceeding. *See Howard,* 966 S.W.2d at 823 & 825. Chedrich actually shot the complainant. *See id.* at 823. John argued that defense counsel was unable to emphasize the relative culpability of the brothers. *See id.* at 827. The appellate court rejected this argument, stating:

> ... [T]raditional distinctions between accomplices and principals have been abolished. Penal Code § 7.01(c). But accepting the assertion that arguably John was less morally culpable than Chedrich because he did not pull the trigger, *no actual conflict of interest is shown.* That John did not personally shoot the complainant was irrelevant to Chedrich's punishment, just as Chedrich's lack of a criminal record was irrelevant to John's. For counsel to point out that John was only a party to the shooting, and to argue that this should

be considered in his favor in assessing punishment, would not necessarily cause the jury to assess a harsher punishment against Chedrich. That counsel did not argue John's lesser culpability to the jury does not in itself prove that a conflict of interest existed.

*Id.* (emphasis added).

In this case, no actual conflict of interest is shown in defense counsel's representation of both Kedric and Terry. Both Kegler brothers blamed Thorne, not each other, for the shooting. Appellants came forward with no evidence to show one of them stood to gain significantly by counsel adducing probative evidence or advancing plausible arguments that were damaging to the cause of the other. The record contains nothing to indicate that any exculpatory or inculpatory statements existed to the detriment of one brother or that the State somehow thwarted defense strategy.

Defense counsel argued Kedric's lesser culpability. Kedric, however, complains about the brevity of counsel's closing statement and contends that counsel should have argued more vigorously on his behalf. Neither counsel's decision as to the length and content of his closing statement, nor his failure to emphasize Kedric's lesser culpability establishes an actual conflict of interest. The trial judge had all the relevant facts of the case before him at the time of sentencing and the appellants' criminal history. In making a closing statement, defense counsel merely summarized the evidence already before the court, including the lesser role Kedric played in the offense. Kedric did not show that he stood to gain significantly by counsel advancing a plausible argument that would have damaged Terry's cause. Therefore, we find the brevity of defense counsel's closing argument is not sufficient to show an actual conflict of interest. Likewise, merely pointing out that Terry did not have a criminal record did not affect Kedric's punishment.

As for Terry's claim of ineffectiveness based on counsel's actions in emphasizing Kedric's lesser role in the offense, we note that the trial court did not necessarily assess a harsher punishment against Terry merely because defense counsel pointed out that Kedric stayed in the car, did not know anyone had been shot, and would have felt differently had his brother been "on the scene and had the gun." Again, the judge had all the relevant facts of the case and the appellants' criminal·history before him. Defense counsel's summary of the evidence did not unfairly prejudice either brother nor is it a manifestation of a conflict of interest. Terry has not shown an actual conflict of interest by establishing that Kedric stood to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to him.

The appellants cite several cases in which the reviewing court found an actual conflict of interest. These case are all distinguishable from the facts presented here. In *Ex parte Parham*, 611 S.W.2d 103, 104–05 (Tex.Crim.App.1981), the Texas Court of Criminal Appeals found an actual conflict of interest where one brother's testimony would *exculpate* the other by proving he did the actual shooting in a murder case. In this case, there is no evidence that the testimony of either of the appellants would exculpate the other. In *Ex parte McCormick*, 645 S.W.2d 801, 803–06 (Tex.Crim.App.1983), the court found the potential for conflict became an actual conflict of interest due to defense counsel's trial strategy. In this case, however, there is no evidence of defense counsel's strategy in the record. In *Amaya v. State*, 677 S.W.2d 159, 161–62 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd), the court found an actual conflict of interest when the discrepancies between the testimony of various witnesses were not exploited because it would have hurt the other co-defendants. Here, there was no discrepancy between the testimony of the appellants, who were the only "witnesses" in the proceeding and who both pled

guilty. As noted, because the record does not show an actual conflict, i.e., that one appellant stands to gain significantly by counsel producing evidence or advancing plausible arguments at the expense of the other, *Cuyler* has no application to this case.

█ Having found that *Cuyler* does not apply, we must evaluate the appellants' ineffective assistance of counsel claims using the *Strickland* analysis. As previously mentioned, under *Strickland*, each of the appellants must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance resulted in prejudice to the appellants. 466 U.S. at 688–92, 104 S.Ct. 2052. Because the record is silent as to defense counsel's strategy, the appellants have not rebutted the presumption that defense counsel was competent. Thus, the first prong of *Strickland* is not met. Consequently, neither Kegler brother can demonstrate that he was denied effective assistance of counsel based on trial counsel's joint representation of both brothers. Accordingly, we overrule Kedric's second point of error and Terry's only point of error.

Having found no merit in the appellants' points of error, the judgments of the trial court are affirmed.