Affirmed and Memorandum Opinion
filed October 7, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00936-CR



Vincente
Gonzales, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 268th District Court

Fort Bend County, Texas

Trial Court
Cause No. 48206



 

MEMORANDUM OPINION 

            A
jury found the appellant Vincente Gonzales guilty of robbery and assessed his
punishment at eight years’ confinement in the Texas Department of Criminal
Justice, Institutional Division, and a $2,000 fine.  In a single issue, the appellant
contends he received ineffective assistance of counsel because he and his
co-defendant brother were represented by the same law firm, which created an
actual conflict of interest that adversely affected his lawyer’s performance.  Based
on the record before us, we affirm.




The
Facts

            On
Thanksgiving Day 2007, at around 1:30 or 1:45 in the afternoon, Christos
Vastakis went to an Exxon station in Fort Bend to pick up drinks and beer for
his family.  Vastakis’s fifteen-year-old daughter and twelve-year-old niece
were with him.  Vastakis stood in line to pay for his items, and when he
reached the cashier he paid in cash, leaving between $70 and $75 in his wallet.
 As he placed his wallet in his back pocket, he felt someone grab him by his
neck and say, “Give me your wallet, nigger.”  At first Vastakis thought it was
a joke, but then he felt pain and the wallet being removed from his pocket. 
Vastakis turned and grabbed the appellant, who pushed Vastakis into some
shelving, again causing him pain.  

            As
his daughter and niece screamed and shouted in the ensuing commotion, Vastakis
chased the appellant out of the store.  Vastakis grabbed the appellant and held
him down as he tried to retrieve the wallet.  As Vastakis was wrestling with the
appellant, the appellant’s brother, Marcos Gonzales, came to the appellant’s
defense.  Marcos hit and kicked Vastakis several times in the head, saying
“Leave my little brother alone, you nigger.”  Vastakis, fearing he would pass
out from the blows, let the appellant go.  The appellant and Marcos then drove
away in a blue Cadillac limousine that was parked outside.  Vastakis chased the
limousine in his pickup truck.  Eventually, Vastakis found the limousine in a
ditch and the police holding the appellant and Marcos in handcuffs.  Vastakis’s
wallet was located at the scene, but his money and driver’s license were no
longer in it.

Procedural
and Appellate Background

            The
appellant and Marcos were both charged with robbery.[1]  On the
State’s unopposed motion to consolidate, the two were tried together.  At
trial, the appellant was represented by Peter DeLeef, and Marcos was
represented by Charles Thompson.  DeLeef and Thompson were partners in the same
law firm.  On appeal, the appellant contends DeLeef and Thompson, as members of
the same firm, actively represented conflicting interests and this conflict
adversely affected DeLeef’s representation of the appellant.  Specifically, the
appellant contends he was sacrificed at trial for the sake of Marcos, who was
presented as the older, more successful brother.  The appellant contends he was
harmed by the lawyers’ trial strategy designed to convince the jury that Marcos
was a college student who merely came to his brother’s defense, while the
appellant, on the other hand, was intoxicated, high, and made a bad decision
for which he alone should be punished.  The appellant contends the lawyers
presented this strategy even though it was Marcos, not the appellant, who
inflicted the most grievous injuries on Vastakis. 

The
State responds that the appellant waived any conflict of interest, because he
stated specifically on the record that he was satisfied with his defense strategy
and then actively participated in that strategy at trial.  The State asserts the
appellant cannot show that an actual conflict adversely affected his counsel’s
performance because his counsel worked diligently throughout the trial to
present the strategy appellant specifically consented to use; namely, that he
would seek a lesser-included punishment for the appellant because the evidence
of the appellant’s guilt for some offense was overwhelming, and Marcos’s
counsel would likewise seek a lesser punishment for Marcos, against whom there
was less damning evidence.  Even if a conflict existed, the State concludes,
the appellant’s counsel effectuated the trial strategy the appellant himself
stated he desired and the appellant was not denied effective assistance of
counsel.  Although we acknowledge this a difficult case, for the reasons stated
below, we affirm.

Standard
of Review

            A
defendant in a criminal trial is entitled to effective assistance of counsel
under both the United States and Texas Constitutions.  U.S. Const. Amend. VI;
Tex. Const. art. I, § 10; see also Tex. Code Crim. P. Ann. Art. 1.051.  A
defendant who does not object at trial to joint representation cannot obtain a
reversal on appeal unless he shows that an actual conflict of interest
adversely affected his lawyer’s performance.  Cuyler v. Sullivan, 446
U.S. 335, 348 (1980); Acosta v. State, 233 S.W.3d 349, 352–53 (Tex.
Crim. App. 2007).  A defendant who shows that a conflict of interest actually
affected the adequacy of his representation need not demonstrate prejudice in
order to obtain relief.  Cuyler, 446 U.S. at 349–50; Routier v. State,
112 S.W.3d 554, 581–82 (Tex. Crim. App. 2003).  But until a defendant shows
that his counsel actively represented conflicting interests, he has not
established the constitutional predicate for his claim of ineffective
assistance.  Cuyler, 446 U.S. at 350.  The mere possibility of conflict
is insufficient to impugn a criminal conviction.  Id.; James v. State,
763 S.W.2d 776, 778–79 (Tex. Crim. App. 1989).  Further, assuming without
deciding that joint representation by two law partners is considered as one
attorney, requiring or permitting a single attorney to represent codefendants
is not per se violative of constitutional guarantees of effective
assistance of counsel.  Burger v. Kemp, 483 U.S. 776, 783 (1987).

An
actual conflict of interest requiring reversal exists when one defendant stands
to gain significantly by adducing evidence or advancing arguments that are
damaging to the cause of a codefendant whom counsel is also representing.  James,
763S.W.2d at 779.  Potential or speculative conflicts identified by an
appellate court in hindsight do not rise to the level of actual conflicts
requiring reversal.  Id. at 780.  The mere fact that each codefendant
would have been willing to accuse the other of nefarious conduct, but chose not
to at trial while both were represented by the same law firm, does not automatically
mean that the attorney either had an actual conflict or that the attorney’s performance
was adversely affected by it.  See id.; Routier, 112 S.W.3d at
584–85; see also Mickens v. Taylor, 535 U.S. 162, 171 (2002) (explaining
that a “mere theoretical division of loyalties” cannot establish a right to
relief because an actual conflict means a conflict that affected counsel’s
performance).

Analysis

            Before
the start of trial, the trial court granted the prosecutor’s unopposed motion
to consolidate the two brothers’ cases.  The court also permitted DeLeef to
question the appellant on the record concerning the waiver of any conflict. 
DeLeef stated he and Thompson had spoken with both defendants on the day of
trial and the day before and both defendants had waived any conflict.  The
appellant was then sworn and DeLeef questioned him concerning their
discussions.  The appellant agreed that he and DeLeef had discussed the
potential for conflict and he did not believe that there was any conflict, but
if there were, he waived it.[2] 
After voir dire, but before the beginning of the State’s case, the prosecutor
again raised the issue of conflict and asked the appellant if he understood
that he could have an attorney from another firm represent him, to which he
answered affirmatively.  The prosecutor then asked specifically:

Q         . . . You are aware of the possible consequences
of having lawyers from the same firm represent you, correct?

A         (No response.)

Q         That there might be a conflict with regards to
one of you taking the fall versus the other one saying they are innocent - -
that might be a detriment to one or the other?  Now, you are aware of that,
correct, Vincente?

A         Yes, sir.

DeLeef
interjected that he had explained to the brothers that one of the situations
that could occur is when one client would “throw the other client under the
bus.”  The court then specifically informed the appellant and Marcos that they
could have different counsel represent them.  The appellant replied that he was
“satisfied” with the representation he had.

            The
appellant suggests that the record does not support that he, a
nineteen-year-old high-school student with no prior experience in the adult
criminal justice system, made a knowing, intelligent, and voluntary waiver.  See
Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997); United
States v. Greig, 967 F.2d 1018, 1021 (5th Cir. 1992).[3]  But the
appellant concedes that his failure to object below requires that he
demonstrate (1) an actual conflict of interest (2) that adversely affected his
attorney’s performance.  See Burger, 483 U.S. at 783; Routier,
112 S.W.3d at 582.  

            The
appellant complains that an actual conflict adversely affected his counsel’s
performance because the strategy DeLeef and Thompson used throughout the trial
was to minimize his brother Marcos’s conduct and to stress the appellant’s own
responsibility for the incident.  He also contends that his attorney went so
far as to absolve Marcos of all blame in his opening statement and conceded
during his closing argument that the State had met its entire burden of proof
and proven every element of robbery against him.  The appellant also asserts
that the only defense even attempted on his behalf was that he was intoxicated
at the time of the incident, and he testified that he did not know whether
intoxication was a defense to prosecution.  Having carefully reviewed the
record, we disagree with the appellant’s characterization of the record and his
conclusion that he has demonstrated an actual conflict that adversely affected
his counsel’s performance.

            The
evidence against the appellant was extremely strong.  The complainant,
Vastakis, testified in detail concerning the incident and positively identified
the appellant at trial.  Vastakis’s niece and the cashier who assisted Vastakis
also testified and identified the appellant as the person who assaulted
Vastakis and took his wallet.  There also was a videotape showing him
committing the offense.  And the appellant was found, within minutes of the
robbery, with an amount of money matching that taken from the victim, as well
as the victim’s wallet, social security card, and driver’s license.[4]  

            In
the face of this overwhelming evidence, trial counsel’s strategy, contrary to
the appellant’s characterization, was to attempt to obtain a jury finding on a
lesser-included offense of assault.  The appellant complains, however, that in
opening argument DeLeef argued at length that Marcos was not guilty of any
offense, but argued that the appellant was guilty and should be punished.  The
appellant specifically points to the following excerpt from DeLeef’s opening
statement:

Vincente, on the other hand, you make the judgment call. 
You decide whatever.  You watch the facts . . . my client, Vincente, was messed
up, been drinking, smoking marijuana, some Xanax.  He didn’t know what he was
doing.  Unexcusable [sic]. . . . I’m not saying he didn’t do anything.  He
did.  And he needs to be punished for something that involved a robbery case.

The
appellant also points to Thompson’s opening statement following the State’s
case, in which he stated, “The evidence is going to show you that Vincente
Gonzales had been using Xanax, marijuana, and alcohol.  And that when he is,
frankly, drunk and high, the evidence is going to show that in the past he has
done stupid things, and made stupid decisions.”[5]
 The appellant contends there was no evidence presented that in the past he did
stupid things or made stupid decisions.

Viewed
in isolation, these snippets of argument do reflect unfavorably on the
appellant.  But the record shows that these statements were not merely an
attempt to benefit Marcos to the appellant’s detriment, as the appellant
contends.  Placed in context, they were consistent with an overall trial strategy
to undermine the intent element of robbery by portraying the appellant as
someone who did not intend to commit robbery, but merely made a bad judgment
call while impaired.  Given the overwhelming evidence of the appellant’s guilt,
it was not an unreasonable strategy to have the appellant accept some fault,
and by denying premeditation, possibly obtain a finding of a lesser-included
offense.  Because no motion for new trial was made to inquire into counsel’s
trial strategy or his discussions with the appellant regarding trial strategy,
we do not know the reasoning behind the strategy.  It is possible that the
appellant considered and rejected a strategy of arguing that he was not guilty
of any offense out of concern that, in light of the evidence, such a strategy
risked impairing his or his counsel’s credibility with the jury.  Or the
appellant could have considered an alternative strategy of arguing that Marcos
was more culpable, and rejected it as too inconsistent with the evidence to be
plausible.

DeLeef’s
actions throughout the trial were consistent with the strategy of seeking a
jury finding on a lesser-included offense rather than robbery.  DeLeef began
his opening statement by arguing that this was not a robbery case but a
misdemeanor assault case.  On cross-examination of the State’s witnesses, DeLeef
and Thompson both suggested through cross-examination several factors
militating against premeditation, including the appellant’s intoxication, the brothers’
distinctive blue Cadillac limousine that had “For Sale” signs with phone
numbers in the windows, and evidence that the incident occurred during the
middle of the day and there were many customers in and around the store at the
time.[6] 
And, in Thompson’s opening statement, he argued, “what the evidence is going to
show you is that Vincente didn’t commit a robbery, and that Marcos didn’t have
any knowledge of the robbery. . . .  And we’re going to request that you find
both of them not guilty of the allegations.”

Also
consistent with this strategy, the appellant testified that he did not plan to
rob the complainant, and that, although he took responsibility for his actions,
it was for the jury to decide whether he was guilty of a felony or a
misdemeanor.  The appellant testified that he had gone into the store to get
ice and there was no plan to rob anyone.  He also testified that he intended
only to play a joke on Vastakis but got scared when Vastakis turned around.  He
admitted that he was drinking, taking Xanax, and using marijuana, and did not
remember much of that day’s events.  DeLeef also elicited testimony from the
appellant that he was nineteen, was still in high school, and wanted to go to
college.  The appellant also testified that he suffered from depression and
that this had contributed to his substance abuse.  Reinforcing the theme that
the appellant was guilty of only a lesser offense, the appellant also testified
that he did not remember taking Vastakis’s wallet, he did not intend to rob
Vastakis, and he had made a “stupid decision.”   

DeLeef’s strategy was at least initially successful because
he requested and received instructions on two lesser-included offenses, theft
and assault, and he argued that the appellant should be found guilty of a
lesser-included offense in light of his intoxication and lack of
premeditation.  DeLeef also moved for a directed verdict based on a lack of
evidence of intent to rob at the end of the State’s case and again at the end
of the defense case, but the trial court denied both motions.  

The appellant also contends the trial strategy of convincing
the jury that the appellant acted alone conflicts with the evidence that “the
only actual injuries” sustained by Vastakis were inflicted by Marcos.  But the
record refutes this assertion.  Although Vastakis testified that Marcos kicked
him several times causing injuries to his eye and head, the evidence also
supported a finding that the appellant assaulted Vastakis.  Vastakis testified
that the appellant squeezed his neck and he felt pain as his wallet was being
taken, and when Vastakis turned around and grabbed him, the appellant pushed
him into some shelving and he again felt pain.  Similarly, the cashier
testified that the appellant “got him around the throat and pulled him back”
and then “threw him down on the ground.”  She also testified that Vastakis and
the appellant struggled, and the appellant threw Vastakis against a metal rack
of Hostess pastries before leaving with Vastakis’s wallet.  The jury also was
able to view the incident on the surveillance video, which the cashier
testified accurately depicted the day’s events.  Thus, although conceivably the
appellant’s counsel could have stressed the more severe injuries Marcos
inflicted, the evidence was more than sufficient to demonstrate at least a
theft and an assault.  Further, during the punishment stage, the appellant’s
counsel did argue that it was Marcos, not Vincente, who inflicted Vastakis’
injuries.  

The
appellant also complains about DeLeef’s closing argument, in which he began,
“Vincente Gonzales, my client, is an idiot.  You’ll agree with me, I can’t find
one of the twelve of you that doesn’t think he is an idiot.  I think he is an
idiot.”  Shortly after this, DeLeef argued that the video was the best evidence
and stated, “You have got to look at the elements as the way they are filmed. 
And it does look like the State has met all of their elements for robbery.  No
question about it.”  He also mentioned that it sounded like he was arguing for
the State and said, “I hope it does.”  The appellant contends that, in effect,
DeLeef argued that the State had met its burden to prove robbery, but the jury
should not convict him of that because it would brand him as a felon for the
rest of his life.  However, immediately after DeLeef stated that it “does look
like” the State met its burden to prove robbery, he explained that he would “come
back to this in a second.”  In context, the record shows that what DeLeef meant
was that although it may appear that the State had met its burden, the jury was
to decide whether it had actually succeeded.  In that vein, DeLeef continued,
explaining:

You can find Vincente guilty of robbery.  You can find him
guilty of assault.  Or you can find him guilty of theft.  I think this is an
assault case.  I don’t think it is a robbery case.  I don’t necessarily think
it is a theft case, but we have three choices in there because you guys make
the decision as to the outcome.

DeLeef
went on to argue that the appellant was not contending that he should be found
not guilty because he was intoxicated; rather, his argument was that the State
was required to meet every element of the offense of robbery beyond a
reasonable doubt, which was a very high burden, and the jury could weigh the
evidence of intoxication when determining whether the State proved the element
of intent.  

            The
appellant also complains that in his closing argument, DeLeef argued, “Yeah, he
hit him.  You saw it on the video. No question about it.  Was it an outright
beating?  No.  Does it make any difference?  No.  He screwed up.  In front of his
[Vastakis’s] kids.  It is inexcusable.  Wanting to punish him for something - -
I’m not here to say walk the guy, find him not guilty of anything.”  But just
before these statements, DeLeef argued “They have to prove intent.  They have
to prove knowledge beyond a reasonable doubt.  High burden, extremely high
burden.”  He again stressed that this was not a robbery case and the jury
should find the appellant guilty only of assault.  DeLeef also repeated this
theme when discussing the evidence tending to show the appellant’s actions were
not premeditated, including the evidence that the appellant and Marcos came to
the store in a distinctive Cadillac limousine with phone numbers in the
windows, it was the middle of the day, the appellant had no weapon, and he left
the store without taking money from the registers.  Ultimately, however, the
jury found the appellant guilty of robbery, and found Marcos guilty of the
lesser-included offense of assault.   

            At
the punishment stage, DeLeef argued that the appropriate punishment for the
appellant was probation.  He elicited testimony from the appellant’s mother and
father and from the appellant himself that he could successfully complete
probation and that he would be better rehabilitated on probation than in
prison.  The appellant also testified, and he admitted responsibility,
apologized to Vastakis and his family, and offered to pay Vastakis’s medical
bills incurred as a result of the offense.  DeLeef, in closing, argued that
although the jury had found that the appellant had committed robbery, there was
no weapon used or other aggravating circumstances.  He also argued that the
underlying theft and assault were misdemeanors, “because we know [Vastakis’s]
injuries came from Marcos.”  The State argued that the appellant should receive
the maximum punishment of twenty years’ confinement in prison, and that Marcos should
receive the maximum of one year in jail.  The jury assessed punishment against
Vincente of eight years in prison, and assessed punishment against Marcos of
365 days in state jail.  Both were assessed fines of $2,000 each.

            The
appellant’s complaint is essentially that he was compared unfavorably with his
codefendant, which alone does not rise to the level of constitutionally
ineffective assistance of counsel.  Viewed in context, his counsel’s
performance reflected a logical strategy given the evidence at trial.  The
appellant does not explain how trial counsel should have defended him, or what
evidence or arguments he should have advanced but did not.  On this record, the
strategy of seeking and accepting responsibility for a lesser-included offense
was a legitimate one.  It was also potentially beneficial to both brothers, as
the State also argued that at the very least Marcos should be found guilty of robbery
as a party to the appellant’s commission of the offense.  

            In
reaching this conclusion, we are guided primarily by two cases, James v.
State and Gaston v. State.  In James v. State, two brothers
were accused of aggravated robbery, were represented at trial by the same
counsel, and pursued a joint defensive strategy.  763 S.W.2d at 777.  The
brothers were convicted, and on appeal one brother claimed a conflict of
interest had denied him the right to effective counsel.  Id. at 776–77. 
The intermediate appellate court overturned the conviction on the ground that
because the brothers could have chosen to accuse each other of committing the
offense, their counsel was operating under a conflict of interest.  See id.
at 780–82.  The Texas Court of Criminal Appeals overruled the intermediate
court, holding that the mere possibility that the brothers could have chosen to
accuse each other of committing the crime did not mean that an actual conflict
existed.  Id. at 782.  

            More
recently, in Gaston v. State, the First Court of Appeals similarly
concluded that the fact that codefendants may choose joint representation when
they could have instead implicated each other does not necessarily create a
conflict of interest.  136 S.W.3d 315 (Tex. App.—Houston [1st Dist.] 2004, pet.
dism’d).  In Gaston, two codefendants were found in a hotel room with
cocaine.  Id. at 317–18.  Either could have implicated the other, but
instead they chose to be represented by one attorney and present a joint
defense, primarily attacking the recovery of the cocaine evidence as the
product of an illegal search.  See id at 319.  When this argument failed
and the appellant was convicted, she asserted her counsel was operating under a
conflict of interest that denied her effective assistance of counsel.  Id.
at 318. In her motion-for-new-trial hearing, the appellant claimed that her
codefendant actually possessed the cocaine and she was merely present.  Id.
at 320–21.  The court of appeals upheld her conviction despite this testimony,
noting that the trial court was not required to take the testimony as true.  Id.
The court also noted that because her trial counsel did not testify at this
hearing, it was possible that her counsel had informed her of the potential
conflict and she may have waived it, choosing instead to pursue the joint defense. 
Id. at 321.  Further, the court concluded that the chosen strategy
advanced arguments helpful to both codefendants under the particular facts of
the case, and although the strategy ultimately failed, the failure was not due
to an actual conflict of interest.  Id.  As the court explained, “Trial
counsel was making the argument with the best possible chance of success in
asking the jury to assess minimal punishments based on the lack of aggravating
circumstances surrounding the present offense.  One may disagree with that
strategy, but there is no conflict of interest in the strategy at all.”  Id.

            These
cases illustrate that the mere possibility that a defendant could have pursued
a different defensive strategy, including choosing to accuse his codefendant of
committing the charged offense, does not necessarily mean that some conflict of
interest adversely affected the defense attorney’s performance.  Here, even
assuming that there was a conflict of interest, the appellant has not demonstrated
that the pursuit of a joint defensive theory that potentially could have
benefitted both defendants—rather than some other, speculative strategy identified
in hindsight—adversely affected the appellant’s counsel’s performance.  See
Mickens, 535 U.S. at 171; Cuyler, 446 U.S. at 350; James, 763
S.W.2d at 782.  Further, the appellant was put on notice of potential conflicts
of interest and actively participated in the chosen strategy.  See James,
763 S.W.2d at 782.  Given the overwhelming evidence that he was guilty of some
offense, trial counsel’s strategy was logical and was consistently implemented
throughout the trial.  Merely because the strategy was ultimately unsuccessful does
not mean that any actual conflict adversely affected the appellant’s counsel’s
performance.  See Gaston, 136 S.W.3d at 321.[7]

            Finally,
to the extent the appellant contends he received ineffective assistance of
counsel because trial counsel argued that Marcos was less culpable than the
appellant, this court has held in similar circumstances that a trial counsel’s
argument that one codefendant is less culpable than the other does not demonstrate
an actual conflict because counsel’s remarks would not necessarily cause the fact
finder to assess a harsher punishment against the other.  Kegler v. State,
16 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  In Kegler,
two brothers, Kedric and Terry, were charged with aggravated robbery and tried
together.  Id. at 910.  They pleaded guilty and the trial court
sentenced Kedric to thirty years in prison and Terry to forty years in prison. 
Id.  One attorney represented both Kedric and Terry at the plea and
sentencing hearings.  Id. at 911.  On appeal, Terry argued that he
received ineffective assistance of counsel based on his attorney’s actions in
emphasizing Kedric’s lesser role in the offense.  Id. at 914.  The court
noted that “the trial court did not necessarily assess a harsher punishment
against Terry merely because defense counsel pointed out that Kedric stayed in
the car, did not know anyone had been shot, and would have felt differently had
his brother been ‘on the scene and had a gun.’”  Id.  Further noting
that the trial court had all the relevant facts of the case before it, the
court held that defense counsel’s summary of the evidence did not unfairly
prejudice either brother or manifest a conflict of interest.  Id.; see
also Gonzales v. State, 14-99-00893-CR, 2001 WL 837949, *2–3 (Tex.
App.—Houston [14th Dist.] July 26, 2001, pet. ref’d) (not designated for
publication) (holding that joint representation of two brothers charged with
aggravated robbery did not create an actual conflict of interest when counsel
argued that appellant’s brother was less culpable than appellant). 

            We
therefore hold that, on this record, the appellant has failed to demonstrate
that he received ineffective assistance of counsel because an actual conflict
of interest adversely affected his counsel’s performance. 

*
* *

            We overrule the appellant’s issue and affirm
the trial court’s judgment.

 

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 









[1]
The record does not contain an indictment or jury charge pertaining to Marcos;
therefore, we have drawn information pertaining to him from the reporter’s record. 
The State’s motion for joinder of prosecution also reflects that both the
appellant and Marcos were charged with the same robbery.





[2]
Marcos was similarly questioned and also waived any conflict.





[3]
The appellant does not assert that the trial court should have held a hearing
of the type the Fifth Circuit outlined in United States v. Garcia, 517
F.2d 272, 277–78 (5th Cir. 1975).  See Greig, 967 F.2d at 1021–22. 
Texas trial courts may find Garcia more instructive than current state
law, however, to the extent that Garcia suggests specific inquiries that
should be asked of a defendant if the trial court discerns a conflict of
interest.  See Garcia, 517 F.2d at 277 (instructing trial courts to
“carefully evaluate the persistent efforts of the defendants to waive any
imperfections in such representation which may be apparent to the court”).





[4]
In contrast, there was far less evidence against Marcos.  The testimony showed
that Marcos never entered the store and that he became involved only after
Vastakis began wrestling with the appellant outside the store.  Vastakis
identified Marcos and testified that he told Marcos that the appellant had
taken his wallet, but Marcos continued to hit and kick him anyway.  The
evidence also showed that Marcos drove the Cadillac in which he and the
appellant fled.





[5]
The appellant also points to DeLeef’s cross-examination of Vastakis, in which
he states, in referring to the appellant, “He is not a young guy.  He is not a
teenager.  I mean, he is a big guy” and “He is young.  He is going to fight, he
can fight.  He is strong.”  Viewed in context, however, it becomes apparent
that DeLeef was attempting to get Vastakis to concede that he would have gotten
the better of the appellant as they struggled outside the store if Marcos had
not intervened.  And, on further questioning, Vastakis agreed that he was
“strangling” the appellant until his brother joined in.  





[6]
Counsel also prevented the admission of a possible extraneous offense by
successfully arguing that evidence of four bags of marijuana found near the
Cadillac should not be admitted into evidence.  





[7]
We do not hold that there was no conflict of interest.  Instead, we assume that
there was a conflict, but hold that such conflict did not adversely affect the
appellant’s trial counsel’s performance.