**Chedrich Demond HOWARD and John Eldre Howard, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 03–96–00371–CR, 03–96–00372–CR.**

Court of Appeals of Texas, Austin.

April 9, 1998.

B. Dwight Goains, McGregor, for Appellant.

Hollis C. Lewis, Jr., County & District Attorney, Cameron, for State.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

A jury found appellants Chedrich and John Howard guilty of attempted murder.[1] Tex. Penal Code Ann. §§ 15.01, 19.02 (West 1994). The jury assessed punishment in each cause at imprisonment for fifteen years and a $5000 fine. We will affirm both convictions.

### 1. Sufficiency of evidence.

On the night of December 22, 1995, the complainant Equalae Davis was playing pool in a Rockdale bar when John Howard entered and asked him to step outside. Davis followed Howard outside, where Chedrich Howard walked up and shot him in the abdo-

---

1. Chedrich Howard is also referred to as Chedrick Howard in the record. We use the spelling that appears in the judgment of conviction.

men with a shotgun. There was testimony describing previous confrontations between Davis and the Howard brothers, and threats by the brothers to shoot or kill Davis.

Chedrich Howard does not challenge the sufficiency of the evidence to support his conviction for the attempted murder of Davis, but John Howard contends that the evidence, "as measured against the jury charge," is insufficient to sustain his conviction as a matter of law. The court's charge included an instruction on the law of parties. *See* Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2) (West 1994). In the application paragraph, however, the court did not refer to the law of parties or apply that law to the facts of the case. Because the application paragraph authorized his conviction only if the jury found that he personally shot the complainant, and because the evidence is undisputed that he did not do so, John Howard concludes that the evidence is legally insufficient to sustain his conviction. *See and compare Plata v. State,* 926 S.W.2d 300, 303–04 (Tex.Crim.App.1996); *Walker v. State,* 823 S.W.2d 247, 248 (Tex.Crim.App.1991); *Jones v. State,* 815 S.W.2d 667, 670–71 (Tex.Crim. App.1991); *with Chatman v. State,* 846 S.W.2d 329, 332 (Tex.Crim.App.1993).

Until recently, the sufficiency of the evidence to sustain a criminal conviction was measured against the court's charge to the jury. *See Boozer v. State,* 717 S.W.2d 608, 610–12 (Tex.Crim.App.1984); *Benson v. State,* 661 S.W.2d 708, 714–15 (Tex.Crim.App. 1982) (opinion on second motion for rehearing). A charge that failed to apply a theory of law to the facts of the case was deemed insufficient to authorize a conviction on that theory, even if the theory was abstractly explained elsewhere in the charge. *Garrett v. State,* 749 S.W.2d 784, 802–03 (Tex.Crim. App.1986) (opinion on rehearing). Thus, if the court instructed the jury on the law of parties generally but did not apply that law to the facts in the application paragraph of the charge, the charge was deemed insufficient to authorize the defendant's conviction as a party. In such a case, the jury was authorized to convict the defendant only on the basis of his own conduct. *Plata,* 926 S.W.2d at 303–04; *Walker,* 823 S.W.2d at

248; *Jones,* 815 S.W.2d at 670–71. It followed that the law of parties could not be considered by the appellate court in deciding whether the evidence was sufficient to sustain the conviction.

After appellant's brief was filed, the Court of Criminal Appeals overruled the *Benson–Boozer* line of cases and abolished the standard of review they formulated. *Malik v. State,* 953 S.W.2d 234, 239 (Tex.Crim.App. 1997). The court wrote:

No longer shall sufficiency of the evidence be measured by the jury charge actually given. Nevertheless, we recognize that measuring sufficiency by the indictment is an inadequate substitute because some important issues relating to sufficiency—e.g. the law of parties and the law of transferred intent—are not contained in the indictment. Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.... [T]he standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted.

*Id.* at 239–40 (citations and footnote omitted).

Applying *Malik* to this cause, we note first that when the evidence raises the question whether the defendant is criminally responsible for the conduct of another, the court may charge on the law of parties even though that theory of culpability was not alleged in the indictment. *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978). In this cause, the evidence supports a finding that Chedrich Howard attempted to murder the complainant, and that John Howard aided his brother with the intent to promote or assist in the commission of the offense. *See* Penal Code § 7.02(a)(2). Therefore, the dis-

trict court properly included a general instruction on the law of parties in its charge to the jury. A correct charge, one that did not unnecessarily restrict this theory of liability on which the State was entitled to rely, would have applied the law of parties to the facts of the case in the application paragraph. Under *Malik,* the court's failure to expressly authorize John Howard's conviction as a party does not require this Court to disregard the law of parties in reviewing the sufficiency of the evidence to sustain his conviction. Instead, we will measure the sufficiency of the evidence against the hypothetically correct charge for this cause, that is, a charge that properly applies the law of parties to the facts.

■ The evidence shows that John and Chedrich Howard had threatened Davis in the past. On the night in question, John Howard called Davis outside, then ducked as his brother shot the complainant at close range with a shotgun. Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could conclude beyond a reasonable doubt that John Howard was criminally responsible for his brother's attempted murder of Davis. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991); *Griffin v. State,* 614 S.W.2d 155 (Tex.Crim.App.1981) (standard of review). John Howard's first point of error is overruled.

## 2. Conflict of interest.

Both appellants contend the district court erred by failing to conduct a hearing to determine whether their joint representation by the same retained attorney constituted a conflict of interest. They advance two arguments in support of this contention, the first being that the Texas Constitution imposes a mandatory duty on trial courts to inquire into the potential for conflict of interest in every case in which one attorney represents more than one defendant. Alternatively, they argue that a motion for severance filed before trial began was sufficient to put the court on notice of a potential conflict of interest, thus requiring the court to conduct a hearing into the matter.

■ In certain cases, representation by the same attorney of multiple defendants in the same criminal trial may constitute ineffective assistance of counsel. *Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978); *James v. State,* 763 S.W.2d 776, 778 (Tex.Crim.App. 1989). Without an objection to joint representation, however, trial courts have no affirmative duty to inquire whether a conflict of interest exists. *Lerma v. State,* 679 S.W.2d 488, 494 (Tex.Crim.App.1982) (opinion on rehearing). Unless the trial court knows or reasonably should know that a particular conflict exists, the court may assume that there is no conflict and need not initiate an inquiry. *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717–18, 64 L.Ed.2d 333 (1980); *Calloway v. State,* 699 S.W.2d 824, 829–30 (Tex.Crim.App.1985).

The Howards acknowledge the above authority, but note that it is based on the Sixth Amendment to the United States Constitution. They argue that the right to counsel and due course of law provisions of the Texas Constitution should be interpreted to afford greater protection against potential conflicts of interest than required by the Sixth Amendment. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991) (interpreting art. I, § 9); Tex. Const. art. I, §§ 10, 19. They urge that the right to conflict-free counsel is so fundamental that it should be implemented by the courts unless expressly waived. *See Marin v. State,* 851 S.W.2d 275, 279–80 (Tex.Crim.App.1993) (distinguishing between forfeitable rights, waivable rights, and absolute requirements). Appellants assert that the Texas Constitution should be held to require an inquiry into potential conflicts of interest whenever the same attorney represents two defendants at trial, and that a conflict should be presumed to exist absent a showing to the contrary or an express waiver by the defendants. They cite no Texas authority so holding.

The Court of Criminal Appeals has held that the constitution and statutes of Texas do not create a standard for judging the effectiveness of counsel that is more protective of a defendant's rights than the standard applied by the United States Supreme Court.

*Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). The Court of Criminal Appeals has consistently cited and followed United States Supreme Court authority, in particular *Holloway* and *Sullivan,* in cases involving alleged conflicts of interest arising from joint representation. *See James,* 763 S.W.2d at 778; *Calloway,* 699 S.W.2d at 828–30; *Lerma,* 679 S.W.2d at 494. However persuasive we might find appellants' argument, the weight of authority precludes a holding that the district court was obligated under the Texas Constitution to *sua sponte* conduct a hearing into the possibility that trial counsel might experience a conflict of interest by representing both defendants at trial. Chedrich Howard's first point of error and John Howard's second point of error are overruled.

Less than one week before these causes were first called for trial, and about one month before the trial actually began, counsel filed a motion for severance stating, "There is an ethical conflict that has arisen that disables the present attorney to try these cases together.... [A] failure to sever these cases presents a grave ethical problem for said attorney and may jeopardize a proper defense for each of these Defendants." The motion added, "[I]t would be unethical for said attorney to reveal to the Court what the conflict concerns and would beg the Court to take her word for it." Appellants argue that this motion placed the district court on notice that a conflict of interest existed, and obligated the court either to see that they were represented by separate counsel or to take steps to ascertain whether the risk of conflict was too remote to warrant separate counsel. *See Holloway,* 435 U.S. at 484, 98 S.Ct. at 1178–79; *Lerma,* 679 S.W.2d at 494. Under the circumstances, they argue, prejudice must be presumed. *See Calloway,* 699 S.W.2d at 830.

■■■■ A conflict of interest claim that is advanced without some allegation of a logical supporting fact does not obligate the trial court to conduct a hearing or entitle the defendant to reversal without a showing of harm. *Id.* at 831. The motion to sever filed in these causes did not identify the alleged ethical problem that threatened to jeopardize the defense. Moreover, there is no showing that the motion to sever was ever brought to the attention of the district court for a ruling. There is no order overruling the motion in the clerk's record, or any notation to that effect on the docket sheet. There is no mention of the motion to sever in the reporter's record. When these causes were called for trial, counsel announced ready. Because the alleged conflict of interest was not adequately brought to the district court's attention, the court's affirmative duty to assure that appellants were not deprived of effective assistance of counsel was not triggered and the presumption of harm does not arise. *Id.; Taylor v. State,* 674 S.W.2d 323, 329 (Tex. App.—Waco 1983), *pet. dism'd,* 770 S.W.2d 778 (Tex.Crim.App.1985). Chedrich Howard's second point of error and John Howard's third point of error are overruled.

■■■■ Finally, both appellants contend that an actual conflict of interest arose from their joint representation by the same attorney. A defendant who did not complain of a conflict of interest at trial can demonstrate a violation of the right to reasonably effective assistance of counsel if he can show that defense counsel was burdened by an actual conflict of interest that had an adverse effect on specific instances of the attorney's performance. *Sullivan,* 446 U.S. at 348, 100 S.Ct. at 1718; *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997). The mere showing of a possible conflict of interest is not sufficient. *Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Crim.App.1982). An actual conflict of interest arises when one defendant stands to gain significantly by counsel adducing evidence or arguments that are damaging to the cause of a codefendant whom counsel is also representing. *Ex parte Alaniz,* 583 S.W.2d 380, 381 n. 3 (Tex.Crim.App.1979). Where there is evidence of counsel's "struggle to serve two masters" that cannot be seriously doubted, a finding of ineffective assistance based on counsel's conflict of interest necessarily follows. *Ex parte Acosta,* 672 S.W.2d 470, 474 (Tex.Crim.App.1984); *Ex parte McCormick,* 645 S.W.2d 801, 806 (Tex.Crim. App.1983).

■■■■ The burden of showing an actual conflict of interest is on the defendant. *Sul-*

*livan,* 446 U.S. at 348, 100 S.Ct. at 1718; *Lerma,* 679 S.W.2d at 498. Chedrich Howard's brief makes no attempt to demonstrate that counsel was burdened by an actual conflict of interest that had an adverse effect on counsel's representation of him. As a consequence, we overrule Chedrich Howard's third point of error. *See Lerma,* 679 S.W.2d at 498.

John Howard argues that he was harmed because trial counsel was unable to and did not argue the relative culpability of the two brothers. He notes that the evidence showed that he was guilty, if at all, only as a party, while his brother actually shot the complainant. He does not explain how this created a conflict of interest for trial counsel at the guilt stage. Adducing probative evidence and advancing plausible arguments that John Howard was not involved in Davis's shooting would not obviously damage Chedrich Howard's cause. In fact, counsel did adduce evidence that John Howard was merely present when the shooting occurred and did argue to the jury that he was not involved in the affair. Insofar as the guilt stage of the trial is concerned, John Howard does not demonstrate that trial counsel was burdened by an actual conflict of interest that had an adverse effect on specific instances of her performance.

John Howard primarily focuses on the punishment stage of trial. Here, he contends, counsel was unable to argue that his lesser culpability warranted a lesser punishment. Legally, John was not less culpable than Chedrich because traditional distinctions between accomplices and principals have been abolished. Penal Code § 7.01(c). But accepting the assertion that arguably John was less morally culpable than Chedrich because he did not pull the trigger, no actual conflict of interest is shown. That John did not personally shoot the complainant was irrelevant to Chedrich's punishment, just as Chedrich's lack of a criminal record was irrelevant to John's. For counsel to point out that John was only a party to the shooting, and to argue that this should be considered in his favor in assessing punishment, would not necessarily cause the jury to assess a harsher punishment against Chedrich. That counsel did not argue John's lesser culpability to the jury does not in itself prove that a conflict of interest existed.

The opinions cited by appellant are distinguishable. In *Amaya v. State,* 677 S.W.2d 159 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd), a conflict between the various alibi witnesses could have been exploited to one codefendant's benefit, but this would have harmed the defenses of the other codefendants. Thus, the record showed that one codefendant stood to gain significantly at the guilt stage by counsel adducing evidence or arguments that would have damaged the cause of his codefendants whom counsel was also representing. In *Hernandez v. State,* 862 S.W.2d 193 (Tex.App.—Beaumont 1993, pet. ref'd), the codefendants timely objected to joint representation on conflict of interest grounds and asked for separate counsel. The trial court overruled the motion without further inquiry. Thus, prejudice was presumed and no specific showing of harm was required. *See Holloway,* 435 U.S. at 484, 98 S.Ct. at 1178–79; *Calloway,* 699 S.W.2d at 830. As the *Hernandez* court acknowledged, its discussion of harm in that opinion was "unguided speculation." 862 S.W.2d at 196.

John Howard has not shown that trial counsel had an actual conflict of interest that had an adverse effect on specific instances of her performance. His fourth point of error is overruled.

**3. Extraneous misconduct.**

Appellants next contend that trial counsel was ineffective because she did not object to questions by the prosecutor meant to imply that they were selling drugs in Rockdale, and failed to preserve error with regard to the prosecutor's jury argument to the same effect. The allegedly improper questions were asked of Cedrick Walton, a witness to the shooting. Walton was, it is fair to say, an uncooperative witness who, during the course of his testimony, asserted that his statements to the police incriminating the Howards were untruthful. The prosecutor asked Walton why he made the accusations against appellants if they were not true. Walton answered, "I was trying to get them locked up so I could protect my drug turf." Walton

immediately thereafter said he did not know if the Howards sold drugs, and maintained that position in the face of repeated questions from the prosecutor. Defense counsel did not object to any of this questioning.

During his jury argument at the guilt stage, the prosecutor said, "Sometimes there are missing pieces in a picture. Today I submit to you that anytime things don't fit together—I think that drugs sometimes are an explanation." Counsel's objection was sustained but no instruction to disregard was requested. The prosecutor immediately returned to the subject of drugs, arguing, "I think whatever Cedric Walton meant to say in his testimony or decided to say during his testimony, I think that he meant for the words to come out of his mouth that I was trying to get the Howards arrested because I was trying to protect my drug turf. He said that and I think he meant it. I think that was some manifestation of what he thought was going on." Again, counsel successfully objected but did not request an instruction to disregard.

To prevail on a claim of ineffective assistance of counsel at the guilt stage, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez*, 726 S.W.2d at 57; *and see Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex.App.—Austin 1992, pet. ref'd). Counsel's performance must be judged in its totality, rather than by isolating individual errors or omissions. *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex.App.—Austin 1997, pet. ref'd). A defendant asserting an ineffective assistance claim must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). This burden is made more difficult when, as in this cause, no motion

for new trial was filed and there is no record focused on the conduct of counsel. *See Jackson*, 877 S.W.2d at 772 (Baird, J., concurring).

■ Assuming that trial counsel erred by failing to preserve the errors described above, appellants have not met the heavy burden of proving ineffective assistance of counsel. The isolated errors of which they complain do not overcome the presumption of reasonable professional assistance. Chedrich Howard's fourth and fifth points of error, and his first point of error six, are overruled.[2] John Howard's fifth, sixth, and seventh points of error are overruled.

**4. Questioning of witnesses by court.**

Appellants contend the district court twice erred by questioning witnesses, and that trial counsel was ineffective for failing to object to this. The first instance came during the testimony of Dr. James Saar, one of the physicians who treated Davis and through whom the hospital's records were introduced. After the State completed laying the predicate for the records and after appellants' objection to their admission was overruled, the court asked the doctor several additional questions regarding the records "for clarification." The other witness appellants assert was improperly questioned by the court was Cedric Walton. After extensive direct and cross-examination of Walton was completed, the court asked him several questions regarding the number of shots he heard. The court again noted that it was "just trying to make some sense out of this case and ... to clarify the Record so that the Jury could understand what the facts and evidence really are."

■ It has long been held that a trial court may impartially question a witness in order to clarify an issue. *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App.1978); *Munoz v. State*, 485 S.W.2d 782, 784 (Tex. Crim.App.1972). Appellants argue that these authorities are no longer sound in light of the adoption of the rules of evidence. They note that Texas did not adopt an equivalent version of federal rule 614, which per-

---

**2.** Chedrich Howard's brief contains two points of error numbered six.

mits trial courts to call and interrogate witnesses. *See* Fed.R.Evid. 614; *Morrison v. State,* 845 S.W.2d 882, 888 n. 18 (Tex.Crim.App.1992), and 903 (Benavides, J., dissenting). Whatever the merit of this argument, appellants did not object to the court's questioning of either witness and any error was waived. *Brewer,* 572 S.W.2d at 721; Tex. R.App. P. 33.1(a). Chedrich Howard's second point of error six and point of error seven are overruled. John Howard's ninth and tenth points of error are overruled.

■ The court's questions of the two witnesses did not adduce new testimony harmful to either appellant, and they do not argue that it did. Under the circumstances, counsel's failure to object to the court's limited questioning of the two witnesses was not an error of such magnitude as to warrant the conclusion either that she was not functioning effectively as counsel or that appellants' defense was prejudiced. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hernandez,* 726 S.W.2d at 57. Chedrich Howard's point of error eight is overruled. John Howard's eleventh point of error is overruled.

**5. Deadly weapon.**

The district court's judgment states that John Howard used a deadly weapon in the commission of the offense. In his final point of error, Howard contends that no such finding was made and asks that this recital be deleted from the judgment.

■ When an affirmative finding is made that a deadly weapon was used or exhibited during the commission of a felony offense, and that the defendant either personally used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited, the district court is required to so state in its judgment. Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp.1998). When a jury is the trier of fact at both stages of trial, the jury must make the affirmative finding. *Barecky v. State,* 639 S.W.2d 943, 945 (Tex. Crim.App.1982); *see Fann v. State,* 702 S.W.2d 602, 604–05 (Tex.Crim.App.1985) (opinion on motion for rehearing).

■ In this cause, the court did not submit the deadly weapon question to the jury as a special issue. *See Travelstead v. State,* 693 S.W.2d 400, 402 (Tex.Crim.App.1985) (special issue is preferred procedure when jury is trier of fact); *Blondett v. State,* 921 S.W.2d 469, 476–77 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd) (special issue submitted). Although the indictment expressly alleged that John Howard used a deadly weapon, and the jury found him guilty "as charged in the indictment," the verdict did not constitute an affirmative finding that he *personally* used or exhibited a deadly weapon because the charge included an instruction on the law of parties and appellant's conviction can be sustained only on that basis. *Compare Reyes v. State,* 741 S.W.2d 414, 432–33 (Tex.Crim.App.1987), *with Polk v. State,* 693 S.W.2d 391, 396 (Tex. Crim.App.1985). The jury's verdict also did not constitute an affirmative finding that Howard was a *party* to the use of a deadly weapon within the meaning of section 3g(a)(2) because the court's parties charge did not require a finding that he *knew* that a deadly weapon would be used or exhibited during the offense. *See Broden v. State,* 923 S.W.2d 183, 191 n. 9 (Tex.App.—Amarillo 1996, no pet.). While it could be argued that the jury impliedly found that Howard was a party to an offense in which he knew that a deadly weapon would be used, an implied finding does not constitute the "affirmative finding" required by the statute. *Tate v. State,* 939 S.W.2d 738, 753–54 (Tex.App.— Houston [14th Dist.] 1997, no pet.); *see Polk,* 693 S.W.2d at 396. We hold that the jury did not make an article 42.12, section 3g(a)(2) affirmative finding, and that the district court therefore erred by entering such a finding in its judgment. John Howard's eighth point of error is sustained.

Chedrich Howard's judgment of conviction in our cause number 3–96–371–CR is affirmed. John Howard's judgment of conviction in our cause number 3–96–372–CR is modified to delete the affirmative finding that a deadly weapon was used in the commission of the offense. As modified, the judgment is affirmed.