NUMBER 13-00-469-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


WILLIAM T. SWARTZ , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the 36th District Court

of Aransas County, Texas.

__________________________________________________________________


O P I N I O N


Before Justices Dorsey, Hinojosa, and Castillo

Opinion by Justice Castillo


Appellant, William T. Swartz, was convicted by a jury of the offense of credit card abuse, a state jail felony. He was
sentenced by the court to two years in a state jail, suspended for a term of three years community supervision, and assessed
a $1000.00 fine. From this conviction Swartz appeals, alleging in a single issue that the evidence is legally insufficient to
support his conviction. We affirm.

Factual Background

 Appellant was a cashier at a "Speedy Stop" convenience store/gas station and was working, along with another cashier,
Priscilla Bardwell, on November 9, 1999. On that day, the victim, Terri Whitman, had her daughter fill up her car with gas,
and paid for the gas at the gas pump with a credit card. After leaving the Speedy Stop, Whitman became aware that she did
not have her credit card and returned to the store. When Whitman and her daughter were unable to locate the card around
the pump area, the daughter reported the loss of the card to Bardwell. At the time Whitman's daughter was pumping gas,
appellant had been outside of the store, taking a cigarette break with some friends with whom Bardwell was acquainted. 
Bardwell identified the group as consisting of two young men - one whose name was Steven Sammons and one whom she
only knew as Brock - and two young women - one she had worked with named Shannon Arswaga and another whose name
she did not know. 

 By the time Whitman's daughter had returned to report the lost card, appellant was inside the store and standing next to
Bardwell. Appellant soon afterwards went back outside with his friends and, shortly thereafter, Bardwell noticed that the
friends were pumping gas into the vehicle in which they had arrived, using a credit card. Bardwell thought this unusual as
she had, on other occasions, noted that these particular friends of appellant always paid with cash. She could not see who
was pumping the gas or who had "swiped" the card. She suspected that they had found, and were using, Whitman's card
and began to place a call to Whitman, when appellant and his friends walked back into the store. Bardwell then hung up
the phone but continued to watch the small group. 

 Appellant retrieved three cartons of cigarettes from the back room and rang them up on register number two, the one to
which he was assigned that night. The girls got two more items and brought them to the counter and one requested a carton
of cigarettes but appellant denied her request, informing her that the carton would overdraw the card. Appellant swiped the
card into the register. Bardwell testified that once the receipt came up, the receipt was signed by Steve Sammons. A total
of 83.34 was charged to the card. The friends then left the store. Appellant remained at work and shortly thereafter took
Bardwell outside the store and asked Bardwell if she "was going to tell." Bardwell responded, "Tell about what?" and
appellant answered, "about the credit card." When she answered, "You know that is fraud," appellant replied, "Oh, well, it's
going to be out the window down the road anyway." Bardwell assured appellant that she would not tell, but the next time
she came in to work, she informed their boss. 

 Later in her testimony at trial, Bardwell stated that Shannon had not signed the receipt as Shannon stood behind "the boys."
When asked again who had signed the receipt, Bardwell said that she did not actually watch "them sign out it" so she did
not know. The manager of the store also testified at trial, specifying that the card was rung up at appellant's register and that
the surveillance tapes, which were normally kept for thirty days, had obviously been tampered with and taped over for the
relevant time period. She testified that appellant knew how to access the tapes but admitted that both he and Bardwell
would have had access.

The Indictment and the Jury Charge

 The State indicted appellant and Sammons in the same indictment, alleging that they, acting alone or together, committed
the offense of credit card abuse, knowing that the card had not been issued to either appellant or Sammons. After the
normal recitations regarding the actions of the grand jury, the corpus of the indictment read: 



 WILLIAM T. SWARTZ AND STEVEN C. SAMMONS, acting alone or together, on or about the 9th day of
November A.D. 1999, and anterior to the presentment of this Indictment, in the County and State aforesaid, did then and
there intentionally and knowingly, with the intent to fraudulently obtain a benefit, to-wit, gasoline and cigarettes, from
Felicia Ratajski, present or use an Exxon credit card issued by Monogram Credit Bank of Georgia and bearing account
number 444 401 014 6, with knowledge that the card had not been issued to the said WILLIAM T. SWARTZ or STEVEN
C. SAMMONS, and that said card was not used with the effective consent of Terri Whitman, the card holder; against the
peace and dignity of the State. 

 

 The application paragraph of the jury charge at the trial of appellant, however, only charged appellant as a party to the
offense, charging Sammons as the principal.

The application paragraph read:



 Now if you find from the evidence beyond a reasonable doubt that on or about the 9th of November, 1999, in Aransas
County, Texas, STEVEN C. SAMMONS, did then and there, intentionally or knowingly, with intent to fraudulently obtain
a benefit, to-wit, gasoline or cigarettes, from Felicia Ratajski, present or use an Exxon credit card issued by Monogram
Credit Bank of Georgia and bearing account number 444 401 014 6, with knowledge that the card had not been issued to
the said STEVEN C. SAMMONS, and that said card was not used with the effective consent of Terri Whitman, the card
holder - and that the defendant WILLIAM T. SWARTZ did then and there, acting with intent to promote or assist the
commission of the offense, if any, aided STEVEN C. SAMMONS to commit the offense, if any, by his own actions and
conduct during the commission of said offense, namely, by accepting and processing the credit card, knowing that the card
had not been issued to the said STEVEN C. SAMMONS, and that said card was not used with the effective consent of
Terri Williams, the cardholder, then you will find the defendant, WILLIAM T. SWARTZ, guilty as charged in the
indictment. 





Legal Sufficiency of the Evidence

 In his sole issue presented, appellant argues that the evidence at trial was legally insufficient to support his conviction. He
asserts that the evidence failed to prove the identity of Steven C. Sammons as the principal actor and therefore contends
that the jury could not have found appellant guilty of aiding Sammons as charged in the application paragraph of the jury
charge. Appellant specifically argues that the testimony of Bardwell, in which she first claimed that Sammons signed the
receipt, and later claimed she did not see who signed the receipt, amounted to an uncertain in-court identification upon
which the guilty verdict could not be supported.

Standard of Review

 In conducting a legal sufficiency review, we consider all the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt.Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this review, we are not to reevaluate the weight and credibility of
the evidence, but rather, act only to ensure that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993). We are also not to measure the sufficiency of the evidence by the jury charge actually given, but
rather by the elements of the offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953
S.W.2d 234, 239-40 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability,
and adequately describes the particular offense for which the defendant was tried. Id. at 240. This standard was formulated
to ensure that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof
of the crime rather than a mere error in the jury charge submitted. Id. 

 Appellant suggests that it would violate his constitutional rights for this Court to consider the sufficiency of the evidence
"under a theory not submitted to the jury." Appellant argues that this Court cannot consider the hypothetically correct jury
charge but must instead measure the sufficiency of the evidence "against the jury charge that the trial court actually
submitted" which he argues was a correct jury charge. Appellant ignores the plain language of Malik which mandates the
use of the hypothetically correct jury charge standard. Malik, 953 S.W.2d at 240. In seeking to have this Court measure
sufficiency by the jury charge actually given, appellant would not only have us reject this clear expression of authority, but
would also have us reinstate the precise problem which Malik sought to correct - "that persons who are guilty of the crime
charged and convicted by a jury may nevertheless be acquitted on appeal because the State failed to object to an erroneous
and/or unnecessary instruction favorable to the defendant." Id. at 239. As noted above, the purpose for rejecting the
standard which appellant proposes to us today was to prevent the "greatest form of relief in the criminal justice system" - 
an acquittal - to be granted for a mere error in the jury charge submitted, rather than an actual failure in the State's proof of
the crime. Id. at 239, 240. 

 Appellant also seems to believe that as the jury charge alleged at least one theory (that of parties) correctly, it was therefore
technically correct and so not subject to the Malik analysis. However, the court of criminal appeals has held that
Malikapplies even in the absence of alleged jury charge error. Gollihar v. State, 46 S.W.3d 243, 255 (Tex. Crim. App.
2001). Of course, the hypothetically correct charge may not modify the indictment allegations in such a way as to allege an
offense different from that alleged in the indictment. Id. at 256 n.20 (citing Planter v. State, 9 S.W.3d 156, 159 (Tex. Crim.
App. 2000)). However, in the present case, the indictment alleged appellant committed the offense as either a principal or
party and so the hypothetically correct charge for this case would have contained both theories. See, e.g., Howard v. State,
966 S.W.2d 821, 825 (Tex. App. - Austin 1998, pet. ref'd)(upholding the sufficiency of the evidence to establish
defendant's guilt as a party even though law of parties was not included in application paragraph because it was raised by
the evidence and so would have been included in a hypothetically correct jury charge.)

 Finally, appellant argues that Malik does not permit an analysis of the hypothetically correct charge for the case if the
hypothetically correct charge contains language not presented to the jury in the actual jury charge. In other words, appellant
argues that Malik can only apply when all the elements of the hypothetically correct charge were actually submitted to the
jury. Appellant cites, but misreads, footnote three of Malik. While indeed a conviction cannot be affirmed on legal and
factual grounds not submitted to a jury, when an indictment has been presented that authorizes conviction on a particular
ground and facts have been presented to a jury that are sufficient to convict on that ground, it is not necessary that the jury
charge itself have specifically stated that ground in order for a conviction to be affirmed.Malik, 953 S.W.2d at 240 ("This
standard can be uniformly applied to all trials...whether or not the indictment is facially complete, and regardless of the
specific wording of the jury charge actually given."). The Malik court itself anticipated the review of theories that were
raised by the evidence, but not charged in the jury charge, or even the indictment, where such theories are permitted by law
and authorized by the indictment. See Malik, 953 S.W.2d at 239 ("...we recognize that measuring sufficiency by the
indictment is an inadequate substitute because some important issues relating to sufficiency - e.g. the law of parties and the
law of transferred intent - are not contained in the indictment."); see also Planter, 9 S.W.3d at 158 (speaking of the
"deficiencies" of the jury charge in not charging the law of parties in two cases decided under Malik); Blanco v. State, 962
S.W.2d 46, 47 (Tex. Crim. App. 1998)(remanding case back to appellate court for review under Malik where the
hypothetically correct charge would have included the law of parties even though the application paragraph did not). 

 Accordingly, we reject appellant's request that we analyze this case under the actual charge given to the jury and proceed to
analyze the sufficiency of the evidence under the Malik standard of the hypothetically correct jury charge.

Analysis


 There was unquestionably error in the jury charge submitted in this case. Although the indictment charged appellant both
as a principal actor and as a party to the offense, (1) the application paragraph in the jury charge only contained language
charging appellant as a party. The hypothetically correct charge in this case would have allowed the jury to consider
appellant's culpability as a principal as well and so we must review the sufficiency of the evidence to support appellant's
conviction as either a principal or a party.

 The elements of credit card abuse are:

 (1) a person; 

 (2) with intent to obtain a benefit fraudulently;

 (3) presents or uses;

 (4) a credit card or debit card;

 (5) with knowledge that the card, whether or not expired, has not been issued to him; and

 (6) with knowledge that the card is not used with the effective consent of the cardholder.

 

Tex. Pen. Code Ann. §32.31(b)(1)(Vernon 1994).

 A hypothetically correct charge must also necessarily be authorized by the indictment, that is, it must contain the statutory
elements of the offense as modified by the charging indictment. Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App.
2000). This does not mean that all indictment allegations must be included, but it does mean that essential elements must
be contained, such as the specific name of the victim. Gollihar, 46 S.W.3d at 254-56. Considering, then, the indictment as
filed, we note first that application paragraphs charging appellant as both a principal and a party would have been
authorized. Incorporating the specific language of the indictment, the hypothetically correct jury charge for this case would
have permitted the jury to convict appellant if they found that:

 (1) William T. Swartz; 

 (2) with intent to fraudulently obtain a benefit, (2) namely gasoline or cigarettes; (3) 

 (3) presented or used;

 (4) an Exxon credit card; (4)

 (5) with knowledge that the card was not issued to William Swartz; and

 (6) with knowledge that it was not used with the effective consent of 

 Terri Whitman



or if they found that 

 (1) Steven C. Sammons;

 (2) with intent to fraudulently obtain a benefit, namely gasoline or cigarettes; 

 (3) presented or used;

 (4) an Exxon credit card; 

 (5) with knowledge that the card was not issued to Steven C. Sammons; and

 (6) with knowledge that it was not used with the effective consent of Terri Whitman; and

 (7) William T. Swartz acted with the intent to promote or assist the commission of the offense aided STEVEN C.
SAMMONS to commit the offense, if any, by his own actions and conduct during the commission of said offense, namely,
by accepting and processing the credit card. (5)



 As the jury would have been authorized to convict appellant as either a principal or a party, we must review the evidence
actually presented to the jury in this case to determine whether it was legally sufficient under either theory of liability. (6)

 We first consider the sufficiency of the evidence to support a conviction of appellant as a principal to the offense. We note
that appellant does not contest the sufficiency of the evidence as to the elements which we list as numbers two through six. 
Appellant's sole argument on appeal went to the question of identity. Nonetheless, after considering the evidence presented
to the jury as to each element required, we find that a rational jury could have found beyond a reasonable doubt that
appellant, with intent to fraudulently obtain gasoline or cigarettes, used an Exxon credit card, with knowledge that the card
was not issued to him and with knowledge that he did not have the consent of the cardholder, Terri Whitman, and so found
him guilty as a principal to the offense. 

 We also find that a rational jury could have found the essential elements of the offense beyond a reasonable doubt under a
hypothetically correct jury charge which charged appellant as a party to the offense and Steven Sammons as the principal.
We disagree with appellant's assertion that the State failed to prove the issue of identity relative to Sammons. Appellant
correctly cites Anderson v. State, 813 S.W.2d 177, 179 (Tex. App. - Dallas 1991, no pet.), for the proposition that an
uncertain in-court identification of an accused as a perpetrator of a crime, standing alone, is insufficient to support a guilty
verdict. However, the court in Anderson then went on to assert that "...an equivocal identification will not make a verdict
improper for lack of evidence if other evidence corroborates it." Id. Moreover, it is well within the factfinder's province to
consider both initial identifications and "retractions." See Fernandez v. State, 805 S.W.2d 451, 456 (Tex. Crim. App.
1991)(when in direct testimony in a bench trial, witness retracted earlier statements identifying husband as being involved
in crime and the state introduced, without objection, hearsay statements by the witness linking the defendant to the crime, it
was up to the trial judge to decide which version of the story he believed). Indeed, as factfinder the jury must judge the
witnesses and may believe all, some, or none of the testimony of a particular witness. Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App. 1991). It is questionable whether an equivocation such as "I don't know" after an earlier positive
statement, can actually be considered a "retraction," as opposed to a mere conflict in testimony which is within the province
of the jury to decide. Id. The jury is not only entitled to resolve conflicts but can even choose to disbelieve any
"recantation." Id. 

 Moreover, in the present case, there was corroborating evidence. This was not a case where the witness made a hazy
identification of a person she did not know and but for that identification there was nothing tying Sammons to the crime.
Rather, the witness in this case knew Sammons, positively identified him as being at the store at the relevant time and
place, tied him to the group that was with Swartz, pumped gas and purchased items with the card. As to the element of the
identification of Sammons, we find that a rational jury could have found this element beyond a reasonable doubt. As
appellant challenges no other aspects of the evidence in reference to his guilt as a party, and as in any case the evidence
supports all the elements in a hypothetically correct charge of appellant as a party, we find that the evidence likewise was
legally sufficient under that theory of liability.

 Conclusion

 Having overruled appellant's sole issue, we affirm the judgment of conviction. 

 

ERRLINDA CASTILLO

Justice



Publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 29th day of November, 2001.

 

1. Although perhaps not the clearest of language, the use of the phrase, "acting alone or together" in an application
paragraph, when preceded by an instruction on the law of parties, has been held to authorize conviction as either a
principal or a party. Marvis v. State, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001).

2. We note that the statute does not require that a person be intending to fraudulently obtain a benefit for himself.

3. The indictment added "from Felicia Ratajski." The penal code statute itself does not list as an element that a benefit is
obtained "from a person or business" or other similar language which would require the State to prove from whom the
benefit was obtained. Therefore this information is surplusage as it is neither an essential element of the offense, nor
necessary to provide particularity in order to provide notice for a required element, nor descriptive of a legally essential
element, as is the phrase "gasoline or cigarettes" as to the required element of "benefit." See Curry v. State, 30 S.W.3d 364,
398-99 (Tex. Crim. App. 2000). However, there was no question about this recitation at trial and the evidence adequately
showed that the benefit was obtained from Felicia Ratajski.

4. The indictment specifically alleged that the card was "issued by Monogram Credit Bank of Georgia and bearing account
number 444 401 014 6." However, even though descriptive of one of the elements required to be proved (the credit card), it
is questionable whether this descriptive information would have to be contained in a hypothetically correct charge. See
Gollihar, 46 S.W.3d at 256-58 (hypothetically correct jury charge need not contain the serial number of stolen go-cart as
alleged in the indictment, clarifying the fatal variance doctrine) and Chambers v. State, 738 S.W.2d 780, 783 (Tex. App. -
Fort Worth 1987, no pet.)(variance between card number at trial and card number in indictment not a fatal variance when
there was other evidence identifying card). Even if this information were included in the hypothetically correct charge,
appellant does not challenge the sufficiency of this element and, indeed, there was no dispute about the card used.
Moreover, there was direct testimony as to the bank issuing the card and the account number and all testimony
corresponded with the allegations in the indictment.

5. The actual jury charged added "knowing that the card had not been issued to the said STEVEN C. SAMMONS, and that
said card was not used with the effective consent of Terri Williams, the cardholder." This language is subsumed in the
language "with the intent to promote or assist the commission of the offense..." and need not have been repeated in the
charge. See Tex. Pen. Code Ann. §7.02(a)(2) (Vernon 1994). In any event, the sufficiency of the evidence as to appellant's
knowledge as to these matters is not contested in this appeal and the evidence in the record establishes such knowledge
sufficiently. 

6. In doing so, we review the evidence under the standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), as previously
noted. We do not, as appellant implies, "assume" that the jury would convict. The question before us, as in any legal
sufficiency challenge, is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319 (emphasis
added). TheMalik standard merely provides us with the measure by which we determine what are the "essential elements
of the offense" that we are to review.