**Opinion filed October 30, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00270-CR

_____

## GRETCHEN DAWN DENNY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11797-D**

## O P I N I O N

A jury convicted Appellant, Gretchen Dawn Denny, of the third-degree felony offense of tampering with physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (West 2016). The trial court sentenced Appellant to six years' confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice, with the sentence suspended and community supervision imposed for six years. Appellant presents four issues for review, arguing that (1) the

evidence was insufficient to support the conviction, (2) the trial court erred in denying Appellant's motion to dismiss the indictment, (3) the trial court erred in allowing a witness to testify in violation of Rule 614 of the Texas Rules of Evidence, and (4) the trial court erred in allowing the prosecution to call a rebuttal witness for the sole purpose of impeachment. We reverse the judgment of the trial court and render a judgment of acquittal.

## I. *Background Facts*

Appellant was an investigations program director at the Abilene office of the Texas Department of Family and Protective Services (CPS). Appellant's conviction arises from her instruction to a subordinate with respect to the disposition of an electronic copy of a photograph.

In August of 2012, CPS opened an investigation into the Klapheke family following the death of a child. Rebecca Tapia, the on-call CPS investigator, received an "after-hours" call notifying her that Emergency Medical Services (EMS) had taken an unresponsive child to Abilene Regional Medical Center and that two additional children remained in the home on Dyess Air Force Base (Dyess). Tapia notified Josh Pruitt, the on-call CPS supervisor, by phone. Barbara McDaniel, another CPS supervisor, informed Tapia that the child was pronounced dead at the hospital.

As Tapia prepared to leave the office to tend to the other children, several events happened in rapid succession. McDaniel received a photograph of the deceased child from Sergeant Lynn Beard of the Abilene Police Department (APD). McDaniel sent the photograph to Appellant via text and showed the photograph to Tapia to prepare Tapia for the severity of the case. McDaniel also showed the photograph to Lindsay Morris, Tapia's supervisor at CPS. Tapia learned that Claudia Gonzalez, another CPS investigator who had just been promoted to

2

investigation supervisor, had closed an investigation into the Klapheke family six days earlier.

Tapia and another CPS investigator left the office to respond to the other children at Dyess. A staff sergeant on the base granted Tapia permission to enter the Klapheke home. Once inside, Tapia assessed that the children were in critical condition; she put both children in the car to take them to Hendrick Medical Center (HMC). As the medical staff treated the children, Tapia let a nurse know about the deceased sibling. Tapia told the nurse that the deceased child had a similar injury that looked like it could be a chemical burn. Hoping that the photograph would help the medical staff diagnose and treat the two children, Tapia texted McDaniel: "Will you please fwd me the pic that Lynn sent you[?] Nurse would like to see it."

Rather than send the photograph immediately to Tapia, McDaniel contacted Appellant to ask if she could forward the photograph to Tapia. Their text exchange is as follows:

> MCDANIEL: [Tapia] text me wanting me to send the pic of the baby to her saying a nurse at hmc wants to see it.
>
> APPELLANT: No
>
> MCDANIEL: Though [sic] so
>
> MCDANIEL: Thought
>
> APPELLANT: Say u delete it
>
> MCDANIEL: Ok
>
> APPELLANT: And delete it.

Appellant further directed McDaniel to inquire about the nurse and the need for the photograph. Although McDaniel never sent the photograph to Tapia, APD Detective Frank Shoemaker, who was at the hospital with Tapia, was able to get it from Sergeant Beard—the photograph remained in the APD's custody at all times. Appellant stated in her police interview that she followed up with Sergeant Beard by

phone after her conversation with McDaniel to clarify the situation and knew that Detective Shoemaker received the photograph from Sergeant Beard.

## II. *Analysis*

### A. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict. *Id.*

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the jury as the sole factfinder; when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that finding. *Jackson*, 443 U.S. at 326.

Evidence does not need to directly prove a defendant's guilt; direct and circumstantial evidence are both probative of guilt, and we review all of the evidence to determine the "combined and cumulative force." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994)). Finally, the sufficiency of the evidence is measured by the "elements of the offense [as] defined by the hypothetically correct jury charge." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

A person commits the offense of tampering with evidence if "knowing that an investigation or official proceeding is pending or in progress, [she] . . . alters, destroys, or conceals any record, document, or thing with intent to impair its verity,

4

legibility, or availability as evidence in the investigation." PENAL § 37.09(a)(1). This statute requires proof of three elements: the defendant (1) knew about an investigation in progress; (2) altered, concealed, or destroyed a thing; and (3) intended to impair the use of that thing as evidence. Appellant does not contest element one.

In Appellant's first issue, she argues that the evidence was insufficient to show that she concealed the photograph in question. The State alleged, in its amended indictment, that Appellant:

> knowing that an investigation was in progress . . . intentionally and knowingly conceal[ed] a record, document, or thing, to wit: a photograph or image of deceased child [T.K.], by directing other Child Protective Services personnel to refuse to provide said record, document, or thing to other individuals involved in said investigation, with intent to impair its availability as evidence in the investigation.

Appellant's sufficiency challenge is three pronged: Appellant (1) challenges the jury charge, (2) argues that she did not conceal the photograph, and (3) argues that she did not possess the requisite intent.

*1. Jury Charge*

First, Appellant argues that the jury charge did not provide an instruction on the "law of parties," which allows a jury to hold a party criminally responsible for an offense committed "by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." PENAL § 7.02(a)(2) (West 2011). Appellant argues that no evidence exists that Appellant herself concealed the photograph and, therefore, that the evidence was insufficient to convict her as a principle to the offense.

In *Malik*, the Court of Criminal Appeals held that the sufficiency of the evidence is measured by the hypothetically correct jury charge, which ensures that

5

a judgment of acquittal is reserved for cases where the State has failed to prove the crime charged, not cases where the "defendant received a windfall in the jury instructions." *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997). In *Howard*, the Austin Court of Appeals applied *Malik* to similar facts. *Howard v. State*, 966 S.W.2d 821 (Tex. App.—Austin 1998, pet. ref'd). In that case, the State charged the defendant with attempted murder, but the jury charge did not refer to the law of parties in the application paragraph. *Id.* at 824. There, the court found that the trial court's failure to expressly authorize a conviction as a party did not require the reviewing court to disregard the law of parties upon review. *Id.* Instead, the court measured the sufficiency of the evidence by the hypothetically correct jury charge, one which properly applied the law of parties to the facts. *Id.*

Here, the application section of the jury charge did not properly instruct the jury on the law of parties. However, the amended indictment charges, and the "accusation section" of the jury charge includes, that Appellant concealed "by directing" a CPS worker to conceal the photograph. Section 7.02(a)(2) of the Penal Code specifically authorizes a finding of criminal responsibility when a person "directs . . . [an]other person to commit the offense." Therefore, a hypothetically correct jury charge, as authorized by the amended indictment, would have instructed the jury to find Appellant guilty if (1) knowing an investigation was in progress, (2) Appellant concealed a photograph by *directing* CPS personnel to refuse to provide the photograph, (3) with the intent to impair its availability as evidence in an investigation. We will review the sufficiency of the evidence using this hypothetically correct charge.

### 2. Concealment

Appellant next argues that the evidence was insufficient to prove that the photograph was ever concealed. Appellant contends that, because the photograph originated with the APD, Appellant could not conceal evidence that the APD already

possessed. The State argues that it only needed to show that "Appellant intended to impair the availability of the photograph as evidence, *not* that its unavailability as evidence was actually accomplished." In the alternative, the State argues that the photograph was actually concealed because Appellant's actions kept Detective Shoemaker from viewing it at the hospital.

The Court of Criminal Appeals has now explicitly rejected the State's primary argument. *See Stahmann v. State*, 602 S.W.3d 573 (Tex. Crim. App. 2020). We note that the *Stahmann* opinion was issued after Appellant was tried and convicted and after both parties had filed their briefs in this appeal. In *Stahmann*, the appellant challenged his conviction for tampering with evidence, arguing in part that the evidence was insufficient to support his conviction. *Id.* at 575. Stahmann was involved in an automobile accident, and witnesses testified that he immediately exited his vehicle and threw a pill bottle over a wire fence before law enforcement arrived. *Id.* The bottle remained visible through the fence, and witnesses immediately alerted law enforcement to its presence. *Id.* The investigating officer testified that he could see the pill bottle through the fence and that the officers were eventually able to retrieve the bottle. *See Stahmann v. State*, 548 S.W.3d 46, 56 (Tex. App.—Corpus Christi–Edinburg 2018) (providing additional facts), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020). The Corpus Christi Court of Appeals reformed the judgment to reflect a conviction for the lesser included offense of attempted tampering with physical evidence. *Stahmann*, 548 S.W.3d at 71.

Although clear evidence existed that Stahmann intended to conceal the pill bottle, the Court of Criminal Appeals agreed with the reformation, finding that "intent and concealment are two distinct elements of the offense" that must each be supported by sufficient evidence. *Stahmann*, 602 S.W.3d at 581. The court further agreed with the Corpus Christi Court of Appeals that "[a]ctual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or

notice, or kept from discovery or observation." *Id.* (quoting *Stahmann*, 548 S.W.3d at 57). We are constrained to follow the holding of the Court of Criminal Appeals; we therefore reject the State's argument that it only needed to prove Appellant's intent to impair the availability of evidence. The State must prove that Appellant intended to conceal and actually concealed the photograph. *See id.*

The State's alternative argument is that Appellant, through her actions, actually concealed the photograph by keeping it from Detective Shoemaker's discovery or observation at the hospital. Based on the above definition of conceal, we cannot agree. In *Stahmann*, law enforcement's knowledge informed the analysis: because witnesses saw and then told law enforcement about the pill bottle, the court found that Stahmann failed to conceal it. *Id.* at 580. Independent of whether law enforcement in this case spoke to Appellant or any other CPS investigator, law enforcement knew that the photograph existed and knew that they had a copy of it. Law enforcement had no difficulty locating the photograph in question. In fact, the evidence established that the photograph was already in the possession of the APD, and Detective Shoemaker ultimately received a copy of the photograph from Sergeant Beard.

We therefore hold that there is no evidence from which a rational trier of fact could have found beyond a reasonable doubt that the photograph was actually concealed. Accordingly, we sustain Appellant's first issue.

### 3. Reformation

Having concluded that the evidence is insufficient to prove the "conceal" element of the charge, we now must consider whether Appellant could have been convicted of any lesser included offense. *See Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014). Reformation of a judgment is required if (1) in the course of convicting the appellant of the greater offense, the factfinder must have necessarily found every element of the lesser included offense; and (2) conducting

an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser included offense at trial, there is sufficient evidence to support a conviction for the lesser included offense. *Id.* If the answer to both questions is yes, we must reform the judgment to the lesser included offense to avoid the unjust result of an acquittal. *Id.* at 300. If the answer to either question is no, we lack authorization to reform the judgment. *Id.*

To perform the *Thornton* reformation analysis, we consider the attempt statute, the tampering statute, and the allegations in the amended indictment. *See id.* at 300–01. A person commits criminal attempt if, with the specific intent to commit an offense, she does an act that amounts to more than mere preparation and that tends but fails to effect the commission of the offense intended. PENAL § 15.01(a) (West 2019). As indicted under Section 37.09, Appellant is guilty of tampering with physical evidence if she (1) knowing an investigation was in progress, (2) concealed a photograph of the deceased child, (3) with the intent to impair its availability as evidence in the investigation.

Combining the elements, the first prong of the *Thornton* analysis is satisfied if the jury necessarily found that Appellant (1) knowing that an investigation was pending or in progress, (2) with the specific intent to conceal the photograph,[1] (3) with the specific intent to impair the photograph's availability as evidence in the investigation, (4) did an act that amounted to more than mere preparation, (5) that tended but failed to result in the concealment of the photograph. Here, as in *Thornton*, all five elements are met. *See Thornton*, 425 S.W.3d at 301–02. Having found Appellant guilty of actual concealment, the jury explicitly found the first three

---

[1]Although Section 37.09 of the Penal Code "seems not to require that the actor *intend* to conceal evidence," "the inclusion of the adverbial phrase 'with the intent to impair its verity, legibility, or availability as evidence in any subsequent investigation' necessarily has the effect of requiring that the actor have a concomitant intent to" conceal the evidence. *Thornton*, 425 S.W.3d at 300 n.59 (citing PENAL § 37.09(d)(1)).

elements and impliedly found elements four and five. *See id.* Because the jury necessarily found all the elements of the lesser included offense, the first prong of the *Thornton* analysis is satisfied. *Thornton*, 425 S.W.3d at 299–300.

We now address *Thornton*'s second prong: whether sufficient evidence exists for the lesser included offense of attempted tampering with physical evidence. *Id.* We review the sufficiency of the evidence for the lesser included offense under the same *Jackson* standard set out above. Under the *Jackson* standard, the factfinder is permitted to draw reasonable inferences if each inference is supported by evidence. *Hooper*, 214 S.W.3d at 15. An inference is a conclusion reached by considering facts and deducing a logical consequence. *Id.* at 16. Juries are not permitted to reach conclusions based on speculation or unsupported inferences. *Id.*

The dispositive question to be decided is whether there was sufficient evidence of a specific intent to conceal the photograph. A person acts with intent when it is her "conscious objective or desire to engage in the conduct or cause the result." PENAL § 6.03(a). Appellant argues that, because the APD already had the photograph, she could not have possessed a "conscious objective" to keep the photograph from the investigation—an impossible result. In *Thornton*, the Court of Criminal Appeals opined on when a defendant might possess intent when attempting an impossibility. There, the court stated that "it is less likely (though not impossible) that the appellant would harbor a 'conscious objective' to cause a result he knew to be impossible." *Thornton*, 425 S.W.3d at 305.

In *Thornton*, the appellant was illegally walking in the middle of the street, and law enforcement approached him to issue a citation for a Transportation Code violation. *Id.* at 292. As law enforcement approached, Thornton "palmed" a small glass crack pipe and dropped it on the sidewalk. *Id.* at 293. The pipe was "smaller than a pen," and the encounter with law enforcement took place as "[t]he sun was coming up." *Id.* at 304. Although Thornton was not likely to succeed in his attempt

10

to hide the pipe, the court found that a jury could reasonably infer that Thornton intended to conceal the pipe based on its material composition, size, and the dimly lit hour of day. *Id.* at 305. The court went on to give an example of when forming intent to conceal might be even less likely: "a neon pink bowling ball dropped at high noon." *Id.* Unlike with the small pipe, in the bowling ball example, a jury would have less reason to make the inference that a defendant intended to conceal evidence from law enforcement. *Id.*

But this is not the case of the neon pink bowling ball that a defendant could intend, in a futile stretch of the imagination, to conceal. Here, the object at issue is a digital photograph—something that, by its very nature, is easily copied, shared, and stored in multiple locations. We recognize that the digital photograph here is distinct from the above cited cases where the allegedly concealed item was tangible, but our analysis remains the same. Although it is not impossible for a person to harbor a conscious objective to produce an impossible result—here concealing something from someone who already has a copy—the unique facts surrounding the creation of the photograph by the APD, combined with Appellant's knowledge about the photograph's origin, weigh heavily against a finding that Appellant intended to conceal the photograph from the investigation.

Appellant, in her police interview, stated that she knew McDaniel had received the photograph from the APD. Further, the photograph remained in the possession of the APD throughout the investigation: Sergeant Beard took the original photograph and it never left his possession; he eventually sent a copy of it to Detective Shoemaker. Juries may make reasonable inferences, considering the facts and the logical consequences, but under these facts it would be unreasonable for a juror to conclude that Appellant harbored a "conscious objective" to conceal a photograph and produce the impossible result of keeping the investigator's own photograph from the investigation.

We conclude that there was insufficient evidence to find, beyond a reasonable doubt, that Appellant possessed the specific intent to conceal the photograph. Therefore, we hold that the evidence is insufficient to support a conviction for the lesser included offense of attempted tampering with physical evidence. Our disposition of Appellant's first issue makes it unnecessary to address Appellant's remaining issues. *See* TEX. R. APP. P. 47.1.

### III. *This Court's Ruling*

We reverse the trial court's judgment and render a judgment of acquittal.


KEITH STRETCHER

JUSTICE


October 30, 2020

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.