MEMORANDUM OPINION




No. 04-02-00301-CR



Kris SIGLER,


Appellant



v.



The STATE of Texas,


Appellee



From the 159th Judicial District Court, Angelina County, Texas


Trial Court No. 22,696


Honorable Paul E. White, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: September 3, 2003


AFFIRMED

 Kris Sigler was charged with the offense of aggravated robbery. A jury found Sigler guilty
of the alleged offense and sentenced him to 65 years imprisonment and fined him $5,000. Sigler's
court-appointed appellate attorney filed a brief containing a professional evaluation of the record and
demonstrating that there are no arguable grounds to be advanced. Counsel concludes that the appeal
is without merit. The brief meets the requirements of Anders v. California, 386 U.S. 738 (1967).
A copy of counsel's brief was delivered to Sigler, who was advised of his right to examine the record
and to file a pro se brief. Sigler filed a pro se brief, claiming: (1) there is insufficient evidence to
convict him of the alleged offense; and (2) the trial court submitted an erroneous charge to the jury.
We affirm. 

 Background


 On December 10, 2001, Sigler and his companion, Sam Moreland, stormed into the Save-A-Lot grocery store in Lufkin, Texas wearing ski masks. During the ensuing robbery, Moreland
threatened the store's employees with a sawed-off shotgun, while Sigler took more than $5,000 from
the store's safe. Sigler and Moreland were apprehended shortly after the robbery. Sigler was
subsequently charged with the offense of aggravated robbery. The State's charging instrument
alleged Sigler, "while in the course of committing theft of property and with intent to obtain or
maintain control of said property, intentionally or knowingly threaten[ed] or place[ed] Teresa
Hunziker in fear of imminent bodily injury or death, and the defendant did . . . use or exhibit a deadly
weapon, to wit: a firearm." The court's charge, to which Sigler did not object, provided a general
instruction on the law of parties. (1) The charge essentially gave a definition of the law of parties and
never applied the law of parties to the facts of the case. The charge applied the law to the facts only
in the context of Sigler being guilty as a principal. The jury subsequently found Sigler guilty as
charged in the indictment and sentenced him to 65 years imprisonment and fined him $5,000. 



Discussion

 Sigler contends that the evidence is legally insufficient to support his conviction. When
reviewing the legal sufficiency of the evidence, we review the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mason v.
State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). The trier of fact is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). Importantly, we review sufficiency of the evidence by measuring
the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953
S.W.2d 234, 239-40 (Tex. Crim. App. 1997). Because the law of parties, if raised by the evidence
would be included in a hypothetically correct charge, it must be used in measuring the sufficiency of
the evidence. See Howard v. State, 966 S.W.2d 821, 824-25 (Tex. App.--Austin 1998, pet. ref'd).

 A person commits a robbery when, in the course of committing theft and with the intent to
obtain or maintain control over property, he "intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003).
A person commits aggravated robbery if he commits robbery as defined above and uses or exhibits
a deadly weapon. Id. § 29.03(a)(2). "A person is criminally responsible for an offense committed
by the conduct of another if . . . acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." 

Id. § 7.02(a)(2). 

 To establish liability as a party, the State must prove conduct constituting an offense plus an
act by the defendant done with the intent to promote or assist such conduct. Beier v. State, 687
S.W.2d 2, 3-4 (Tex. Crim. App. 1985). Evidence is sufficient to convict a person under the law of
parties where the person is present at the commission of the offense, and encourages the commission
of the offense either by words or other agreement. Id. "Mere presence alone without evidence of
intentional participation is insufficient." Id. The fact finder may base its determination on the events
occurring before, during, and after the commission of the offense, and may rely on the actions of the
accused which show an understanding and common design to do the criminal act. Id.

 We must now determine whether a rational juror could have found Sigler, either as a principal
or as a party, guilty of the alleged offense. The evidence presented against Sigler consisted of the
testimony of LaDonna Stewart, Teresa Hunziker, Gerald Williamson, Debra Walsh, Terry Williams,
Tyrone Williams Sr., Tammy Brina, and Ron Stubblefield. 

LaDonna Stewart

 LaDonna Stewart, a patron of the Save-A-Lot store, testified she was at the store at the time
the robbery occurred. Stewart testified two men came into the store shortly before closing time,
announcing "this is a holdup." The shorter of the two men wore a black ski mask, while the taller of
the two wore a camouflage ski mask. Stewart further stated that the taller man wore a black shirt
and carried a gun. 

 According to Stewart, the man with the gun pointed it at one of the store's employees and
threatened to "blow the clerk's brains out" if she did not open her cash register. The clerk had
difficulty opening the register so the store's assistant manager tried to assist. After the assistant
manager could not open the register, one of the men knocked the assistant manager to the ground.
The man then dragged the assistant manager to the area of the store where the store's safe was
hidden. Shortly thereafter, the men fled from the store.

Teresa Hunziker

 Teresa Hunziker, assistant manager of the Save-A-Lot store, testified two African American
men came into the store and announced "this is a holdup." Hunziker could not identify the men
because they were wearing ski masks. Hunziker testified one of the men wore a black ski mask, while
the other wore a black ski mask and a green hat. She testified the shorter of the two men wore a red
shirt and carried a black trash bag. Hunziker stated the shorter of the two men did not possess a
weapon. The taller of the two men carried a sawed-off shotgun. 

 According to Hunziker, the man with the gun ordered one of the store's clerks, Rhonda Jones,
to open her register. When Jones could not open the register, the man threatened to blow Jones's
head off. Hunziker testified that she tried to assist Jones in opening the register, but could not open
it. When Hunziker failed to open the register, the man carrying the trash bag knocked her to the
ground and struck her twice. The man then proceeded to drag her to the area of the store where the
store's safe was hidden. Hunziker opened the safe and the man took what money he could. Both
men then fled the store together.

Tammy Brina

 Tammy Brina, a cashier at the Save-A-Lot store, testified that two men came into the store
shortly before closing time and announced "this is a holdup." Brina testified the taller of the two men
wore a black ski mask with a camouflage hat. She testified that this man carried a sawed-off shotgun.
The shorter of the men wore a black ski mask which was red on the inside. He also wore a maroon
shirt with a camouflage shirt over the top of it. 

Ron Stubblefield

 Ron Stubblefield, a detective with the Lufkin Police Department, testified that Sigler was
shorter than Moreland. 

Gerald Williamson

 Gerald Williamson, a Lufkin Police Officer, testified he received a call indicating an armed
robbery had occurred at the local Save-A-Lot store. Williamson testified he was informed that two
Caucasian males wearing camouflage clothing and carrying a shotgun fled the Save-A-Lot store and
ran toward the nearby Alamo Apartments. Williamson drove to the apartment complex and observed
an African American man, near apartment 913B, removing a green jacket. Because the man did not
fit the description he had received from dispatch, Williamson continued his search for the suspects.
Williamson proceeded to the Save-A-Lot store after his search of the apartment complex was
unsuccessful. Upon arriving at the scene of the robbery, Williamson learned that the suspects were
African American -- not Caucasian. 

 Williamson immediately returned to apartment 913B of the Alamo Apartments. Williamson
met the owner of the apartment, Tyrone Williams, and another individual, Sam Moreland. Sigler was
not present. While speaking with the men, Williamson observed a hole at the base of Williams's
apartment. Upon closer inspection, Williamson discovered a camouflage hat, sawed-off shotgun,
black ski mask, one green rubber glove, and one pair of black gloves. Williamson also testified the
green shirt/jacket he previously observed the individual removing outside apartment 913B was found
on the love seat of Williams's apartment. 



Debra Walsh

 Debra Walsh, the Crime Scene and Identification Technician for the Lufkin Police
Department, testified a black trash bag was recovered from the barbeque pit outside apartment 913B.
Walsh further testified that Sigler's car keys were found in the pocket of a shirt recovered from inside
apartment 913B. She described the shirt which contained the keys as a maroon thermal shirt with
a green shirt over the top of it. 

Terry Williams

 Terry Williams, a relative of Sigler, testified that he was an employee of the Save-A-Lot store.
Terry testified that sometime before the robbery occurred, Sigler came into the Save-A-Lot and asked
various questions about the store, including what time the store closed. 

Tyrone Williams Sr.

 Tyrone Williams, Sr. testified Sigler was his nephew. According to Williams, Sigler and
Moreland came to his apartment at around 8:00 pm on the night of the robbery. Both men were out
of breath. Williams testified that the men had indicated "a dog got loose and was chasing them."
Williams further testified that he did not remember what Sigler was wearing when he arrived at the
apartment. However, he did remember that Sigler took off his shirt and left it on his couch. Williams
also stated that he noticed reddish colored cotton/lint in Sigler's hair. Williams also testified that
Moreland was wearing all black clothing when he arrived at the apartment.

Analysis

 It can be reasonably inferred from the testimony presented that Sigler and Moreland were the
men who robbed the Save-A-Lot store. Sigler was the man who carried the trash bag, while Moreland
was the one who exhibited the firearm during the robbery. Thus, it is evident that the record is devoid
of any evidence which would indicate Sigler used or exhibited a firearm at any time during the
robbery. All of the evidence points to Moreland as the one who used or exhibited a firearm. Because
there is no evidence that Sigler used or exhibited a firearm, we hold a reasonable jury could not have
found Sigler guilty as a principal. See Jackson, 443 U.S. at 319; Mason, 905 S.W.2d at 574. 

 Although the evidence is insufficient to convict Sigler as a principal, the evidence is sufficient
to show he was a party to the offense. Sigler was physically present at the time of the robbery. His
conduct from the time he and Moreland entered the store until the time the men fled the store
suggests that he and Moreland were acting in concert with one another. The record indicates that
upon entering the store, Sigler and Moreland acted in unison -- Moreland held everyone in the store
at gunpoint, while Sigler stole the store's money. Sigler and Moreland then fled togther toward the
Alamo Apartment complex once the robbery was complete. Based on the evidence presented, a
reasonable jury could have believed that Sigler was guilty as a party. See Jackson, 443 U.S. at 319;
Mason, 905 S.W.2d at 574. Thus, we hold the evidence is legally sufficient to support Sigler's
conviction. Sigler's first complaint is overruled.

Charge Error
 Sigler also contends that because the court's charge failed to apply the law of parties to the
facts, he was egregiously harmed. When a defendant complains of charge error on appeal, we must
first determine whether there is any error in the jury charge. Hutch v. State, 922 S.W.2d 166, 170
(Tex. Crim. App. 1996). If we conclude there is error, we must determine if the error caused
sufficient harm to warrant reversal. Id. at 170-71. The extent of harm requiring reversal is controlled
by whether the error was properly preserved at trial. Id. at 171. Where the defendant failed to object
to the error at trial, we reverse only if the record shows that the error was so egregiously harmful that
the defendant was denied a fair and impartial trial. Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984). Egregious harm includes errors: (1) affecting the case's foundation; (2) denying
the defendant a valuable right; (3) significantly affecting a defensive theory; or (4) making the case
for guilt or punishment clearly and substantially more compelling. Hutch, 922 S.W.2d at 171;
Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). In determining the degree of harm,
we look to the entire jury charge, the state of the evidence, the arguments of counsel, and any other
relevant information from the entire record. Hutch, 922 S.W.2d at 171. As noted earlier, the court's charge instructed the jury on the law of parties only in the
abstract. The charge failed to apply the law of parties to the facts. The failure to apply the law of
parties to the facts constitutes charge error. See Campbell v. State, 910 S.W.2d 475, 477 (Tex. Crim.
App. 1995). Sigler did not object to the jury charge; therefore, he must demonstrate the failure to
apply the law of parties to the facts resulted in egregious harm. See Almanza, 686 S.W.2d at 171.
 We have reviewed the record in this case and believe that Sigler was not denied a fair and
impartial trial. Although none of the State's witnesses could personally identify Sigler or Moreland,
there is ample circumstantial evidence suggesting Sigler and Moreland were the individuals
responsible for robbing the Save-A-Lot store. Further, there is ample evidence suggesting Sigler and
Moreland were acting together, with Moreland as the gunman and Sigler as the money man. The
record reveals that the State's sole theory of the case was that Sigler was a party to the offense.
Moreover, the State's closing argument, which was made without objection, directed the jury to
focus on the "rule of parties" included in the instructions of the court's charge. The State emphasized
"this is the law [referring to the law of parties] and you should follow it." Under such circumstances,
we cannot say Sigler was egregiously harmed by the charge's failure to apply the law of parties to the
facts. Sigler's second complaint is therefore overruled. 

Conclusion

 The judgment of the trial court is affirmed (2) and counsel's motion to withdraw is granted.
Nichols v. State, 954 S.W.2d 83, 86 (Tex. App.--San Antonio 1997, no pet.); Bruns v. State, 924
S.W.2d 176, 177 n. 1 (Tex. App.--San Antonio 1996, no pet.).

 Catherine Stone, Justice

Do Not Publish




1. A court may charge on the law of parties even though that theory of culpability is not alleged in the
indictment. Howard v. State, 966 S.W.2d 821, 824 (Tex. App.--Austin 1998, pet. ref'd).
2. We note that Sigler also complains that the judgment in this case contains an affirmative deadly weapon
finding that should be deleted. We have reviewed the judgment and find no such affirmative finding. Therefore,
Sigler's complaint lacks merit.